UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEE BARROWS, ANNE PELOW, MICHAEL SAVAGE, GEORGE RENSHAW, SARAH MULCAHY, SHIRLEY BURTON, and DENISE RUGMAN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> LOUIS DZIADZIA, CHRISTINA ALEXANDER, LORETTA JACKSON, MARY SMITH, IRMA BECKER, and CHARLES HOLT, on behalf of themselves and all others similarly situated, <br><br> Intervenor-plaintiffs, <br><br> DOROTHY GOODMAN, on behalf of herself and all others similarly situated, <br><br> Intervenor-plaintiff, <br><br> v. <br><br> THOMAS E. PRICE, M.D., Secretary of Health and Human Services, <br><br> Defendant. | Civil Action No. 11-CV-1703 (MPS) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL AND FACTUAL BACKGROUND OF THE CASE ............................... 2

     A.    Legal and procedural background........................................................... 2

     B.    The named plaintiffs' situations............................................................. 3

III.   THE NAMED PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(a)
     AND RULE 23(b)(2) .......................................................................................... 11

     A.    Introduction........................................................................................... 11

     B.    Plaintiffs meet the requirements of Rule 23(a) .................................... 12

           1.    "Numerosity" or "impracticability": The size of the class and other
                 factors demonstrate that joinder is impracticable .................................... 13

           2.    Rule 23(a)(2) and (3): Common questions of law and fact exist,
                 and the claims of the named plaintiffs are typical of the claims of
                 the class members ................................................................................... 17

           3.    Rule 23(a)(4): The named plaintiffs will protect the interests of the
                 class...................................................................................................... 20

     C.    Plaintiffs meet the requirements of Rule 23(b)(2) ............................... 22

IV.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 22

V.    CONCLUSION.................................................................................................. 24

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ................................................................................................................19

*Amara v. Cigna Corp.*,
    925 F. Supp. 2d 242 (D. Conn. 2012), *aff'd*, 775 F.3d 510 (2d Cir. 2014) ......................18

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................................12, 22

*Austen v. Catterton Partners V, LP*,
    268 F.R.D. 146 (D. Conn. 2010) ......................................................................................12

*Barrows v. Burwell*,
    777 F.3d 106 (2d Cir. 2015) ..........................................................................................3, 19

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ........................................................................................................11, 22

*Clark v. Astrue*,
    274 F.R.D. 462 (S.D.N.Y. 2011) ......................................................................................15

*Comer v. Cisneros*,
    37 F.3d 775 (2d Cir. 1994) ...............................................................................12, 18, 19, 22

*Conn. State Dep't of Social Services v. Shalala*,
    No. 3:99CV 2020 SRU, 2000 WL 436616 (D. Conn. Feb. 28, 2000) ..............................12

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ...............................................................................................13

*Doe v. Bridgeport Police Dept.*,
    198 F.R.D. 325 (D. Conn. 2001) ....................................................................................21, 22

*Easterling v. Connecticut*,
    265 F.R.D. 45 (D. Conn. 2010) ......................................................................................12, 17

*Exley v. Burwell*,
    No. 3:14-CV-1230-JAM, 2015 WL 3649632 (D. Conn. June 10, 2015) ................ *passim*

*Fox v. Bowen*,
    656 F. Supp. 1236 (D. Conn. 1987) ...............................................................................12, 21

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) ..........................................................................................................11

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ..........................................................................................................12

*Gray Panthers Project Fund v. Thompson*,
    273 F. Supp. 2d 32 (D.D.C. 2002) .................................................................21

*Haddock v. Nationwide Fin. Services*,
    293 F.R.D. 272 (D. Conn. 2013) ..................................................................18

*Healey v. Thompson*, 186 F. Supp. 2d 105 (D. Conn. 2001), *aff'd in part, vacated
    and remanded in part sub nom. Lutwin v. Thompson*, 361 F.3d 146 (2d
    Cir. 2004) .....................................................................................................21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ...........................................................................21

*In re IPO Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ...........................................................................12

*Jimmo v. Sebelius*,
    No. 5:11-cv-17, 2011 WL 5104355 (D. Vt. Oct. 25, 2011) ...........................21

*Kaye v. Amicus Mediation & Arbitration Group, Inc.*,
    300 F.R.D. 67 (D. Conn. 2014) .........................................................13, 16, 20

*Landers v. Leavitt*,
    232 F.R.D. 42 (D. Conn. 2005) ....................................................................12

*Landers v. Leavitt*,
    No. 3:04-cv-1988, 2006 WL 2560297 (D. Conn. Sept. 1, 2006), *aff'd*, 545
    F.3d 98 (2d Cir. 2008) ..................................................................................21

*Linsley v. FMS Inv. Corp.*,
    288 F.R.D. 11 (D. Conn. 2013) ................................................................17, 18

*Machado v. Leavitt*,
    542 F. Supp. 2d 185 (D. Mass. 2008) ..........................................................21

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ................................................................ *passim*

*Matyasovszky v. Housing Authority of City of Bridgeport*,
    226 F.R.D. 35 (D. Conn. 2005) .........................................................11, 13, 20

*Maziarz v. Housing Authority of the Town of Vernon*,
    281 F.R.D. 71 (D. Conn. 2012) .....................................................18, 19, 20, 21

*Morrison v. Ocean State Jobbers, Inc.*,
    290 F.R.D. 347 (D. Conn. 2013) ..................................................................18

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ........................................................................19

*Perkins v. S. New England Tel. Co.*,
    669 F. Supp. 2d 212 (D. Conn. 2009) ..........................................................19

*Petrolito v. Arrow Fin. Servs., LLC,*
    221 F.R.D. 303 (D. Conn. 2004)....................................................................18

*Raymond v. Rowland,*
    220 F.R.D. 173 (D. Conn. 2004)..............................................13, 15, 17, 21

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993)............................................................... *passim*

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010)......................................................................................13

*Sherman v. Burwell,*
    No. 3:15-CV-01468 (JAM), 2016 WL 4197575 (D. Conn. Aug. 8, 2016) ......................12

*Situ v. Leavitt,*
    240 F.R.D. 551 (N.D. Cal. 2007)..................................................................21

*State of Conn. Office of Protection & Advocacy for Persons with Disabilities v.
    Connecticut,*
    706 F. Supp. 2d 266 (D. Conn. 2010) ..............................................15, 17, 22

*Sykes v. Mel S. Harris & Assoc. LLC,*
    780 F.3d 70 (2d Cir. 2015).............................................................................17

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
    546 F.3d 196 (2d Cir. 2008)..........................................................................12

*U.S. Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980)......................................................................................11

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..........................................................................17, 18, 20

*Wilson-Coker v. Shalala,*
    No. 3:00CV1312 (CFD), 2001 WL 930770 (D. Conn. Aug. 10, 2001) ..........................12

## STATUTES

42 U.S.C. § 1395x(i)...............................................................................................2

## RULES

Fed. R. Civ. P. 23(a) ................................................................................... *passim*

Fed. R. Civ. P. 23(b) ..................................................................................11, 12, 22

Fed. R. Civ. P. 23(g)(1)....................................................................................22, 23

Fed. R. Civ. P. 23(g)(4)............................................................................................22

## REGULATIONS

42 C.F.R. § 409.30(a)(1)...........................................................................................2

**MISCELLANEOUS**

7A Wright, Miller & Kane, Federal Practice and Procedure § 1762 (3d ed. 2005) .....................13

72 Fed. Reg. 66580 (Nov. 27, 2007).............................................................13

Davis, Schoen, and Bandeali, *Medicare: Fifty Years of Ensuring Coverage and
   Care* (The Commonwealth Fund, April 2015) ................................................16

Feng, Wright, & Mor, "Sharp Rise in Medicare Enrollees Being Held in Hospitals
   for Observation Raises Concerns about Causes and Consequences," 31
   *Health Affairs* 1251 (2012) ...............................................................14

OIG (HHS), *Vulnerabilities Remain Under Medicare's 2-Midnight Hospital
   Policy*, OEI-O1-02-15-00020 (Dec. 2016) .....................................................14

I.      INTRODUCTION

Plaintiffs and intervenor-plaintiffs ("plaintiffs") challenge the Secretary of Health and

Human Services' policy of failing to provide Medicare beneficiaries with an opportunity to

appeal when they are placed on observation status at hospitals.  As the named plaintiffs' own

situations demonstrate, beneficiaries can be placed on observation status and considered

"outpatients" for days at a time.  While on observation status, beneficiaries are covered by Part B

of Medicare rather than by Part A, which covers inpatient hospitalizations.  Beneficiaries are thus

deprived of the three-day, Part A *inpatient* stay that is required for Medicare coverage of post-

hospital care at a skilled nursing facility ("SNF").  This results in beneficiaries and their families

either paying the exorbitant cost of the SNF or forgoing the care altogether.  However they are

denied an opportunity to challenge the observation classification.

All of the named plaintiffs experienced severe negative ramifications from being placed on

observation status.  They are pursuing a due process claim for declaratory and injunctive relief to

correct the Secretary's policy of failing to provide an opportunity to appeal the observation status

classification.  Because the placement of Medicare beneficiaries on observation status occurs

around the country, they seek to represent a nationwide class of Medicare beneficiaries who have

suffered or will suffer from the lack of opportunity to appeal their status.  Specifically, they

request certification of a class defined as:

> All Medicare beneficiaries who, on or after January 1, 2009, have had or will
> have had any portion of a stay in a hospital treated as observation status and
> therefore not covered under Medicare Part A.

> Furthermore, pursuant to Rule 23(g), plaintiffs move that their counsel be appointed class

counsel.

## II.     LEGAL AND FACTUAL BACKGROUND OF THE CASE

### A.     Legal and procedural background

The background of the case has been described in several previous memoranda and will be summarized briefly here.

Seven individual Medicare beneficiaries (or their estates), later joined by eight additional individuals,[1] filed a putative class action against the Secretary of the Department of Health and Human Services, who administers the Medicare program through the Centers for Medicare and Medicaid Services ("CMS").  Each plaintiff had been hospitalized for at least three consecutive days but was classified as an outpatient on "observation status," rather than as an inpatient.  This distinction is significant because classification as an observation status outpatient carries different cost-sharing obligations in the hospital and because eligibility for Medicare coverage of post-hospital care in a SNF depends on having a three-day *inpatient* hospital stay.  42 U.S.C. § 1395x(i); 42 C.F.R. § 409.30(a)(1).  Because they were not classified as inpatients, plaintiffs were ineligible for coverage of their expensive care in SNFs.  The action challenged the Secretary's policy of classifying some hospitalized beneficiaries as observation status, rather than admitting them as inpatients, as well as the Secretary's failure to ensure timely written notice and an opportunity to appeal.

In September 2013 this Court granted the Secretary's Rule 12(b)(6) motion to dismiss as to all causes of action.  Memorandum of Decision (ECF #106).  As a consequence, the class certification motions of the original plaintiffs and first group of intervenor-plaintiffs were also denied as moot.  *Id.* at 3, 49.  Plaintiffs appealed the district court's holdings on their due process claims, thus limiting the action to notice and appeal rights.  In January 2015 the Second Circuit

---

[1] One plaintiff died without substitution, leaving 14 named plaintiffs currently in the case.

remanded the action and ordered discovery on whether plaintiffs possess an interest protected by

the Due Process Clause in coverage of their hospital stays as inpatients under Medicare Part A.

*Barrows v. Burwell*, 777 F.3d 106, 115 (2d Cir. 2015).  The parties conducted discovery and

submitted cross motions for summary judgment on the protected property interest issue.  The

Secretary also filed a supplemental motion to dismiss on the two other aspects of a due process

claim: state action and what process is due.

Following oral argument and supplemental briefing, the Court issued a decision on

February 8, 2017.  Memorandum of Decision (ECF #196).  The Court found that even though

some plaintiffs were deceased or had received refunds for their individual underlying claims, the

"inherently transitory exception [to mootness] applies and the named plaintiffs' claims are

preserved for the purposes of the putative class action."  *Id*. at 10.  The Court also denied both

motions for summary judgment, granted the supplemental motion to dismiss as to plaintiffs'

expedited notice claim, and denied the motion to dismiss as to their appeal claim.  The parties

conferred and submitted a revised Form 26(f) Report, and after a status conference on February

28, 2017, the Court entered a scheduling order for further proceedings (ECF #202).  All named

plaintiffs now pursue the instant motion for certification of a nationwide class.

## B.     The named plaintiffs' situations

The scenarios of the 14 named plaintiffs demonstrate that the very act of trying to appeal

the observation status classification is problematic and creates additional complications for

families reeling from the severe illness of a relative and the cost of care, especially SNF care.

Though the plaintiffs all attempted to appeal and five were successful in their challenges, none

was able to appeal before incurring the very high cost of SNF care and many had to forge

tortuous paths to find any possibility of remedy from Medicare.  Moreover, it is undisputed that

CMS currently provides *no* method of appeal for patients in observation status.  Memorandum of Decision at 36.

### 1.   Richard Bagnall (represented by Anne Pelow)

Dr. Richard Bagnall was a retired physician and 91 years old at the time of his hospitalization for dehydration at University of Connecticut John Dempsey Hospital from July 9 through July 12, 2009.  He signed a Medicare notice on July 9 that he was a hospital inpatient and was moved to a hospital floor.  Complaint ("Compl.") (ECF #1) ¶¶ 56-57.  He was categorized as observation status during the hospitalization, and as a result, his subsequent care in a SNF cost $5,685.  *Id*. ¶¶ 58-60.  With representation, Dr. Bagnall appealed both the hospital and SNF claims.  The Medicare Appeals Council (the highest level of administrative appeal) remanded the claims to an Administrative Law Judge (ALJ) in 2012.  Appeals Council Decision (ECF # 68-2).  The ALJ then remanded the claim to a lower-level appeals contractor (ECF #83-1).  After the lower-level contractor and ALJ again issued unfavorable decisions, Dr. Bagnall appealed to the Appeals Council again, where the claim is still pending.  *See also* Chart of Named Plaintiffs' Administrative Appeal Statuses ("Chart") (ECF #76-1) at 1.

### 2.   Mildred Savage (represented by Michael Savage)

Connecticut resident Mildred Savage was 92 years old and hospitalized at Backus Hospital from September 11 through September 16, 2010 for severe hip pain after a fall.  She was sent to a SNF on September 16, but returned to the hospital from September 17 to September 19, and discharged to a SNF again.  Though she was initially admitted as an inpatient, her status was changed to observation after it did not pass a first-level review under the InterQual commercial screening guide and Executive Health Resources ("EHR"), which contracted with the hospital, determined she was appropriate for observation status.  She paid $17,388 for SNF care from September 20 to November 5, 2010.  Compl. ¶¶ 61-65; Def.'s 56(a)(2) Statement

(ECF #176-1) ¶ 108.  With representation, Mrs. Savage received favorable administrative decisions on her hospital and SNF claims.  Chart at 3.

### 3.  Lawrence Barrows (represented by Lee Barrows)

Lawrence Barrows was 76 years old when he entered University of Connecticut John Dempsey Hospital on July 3, 2009 due to frequent falls caused by a disease of the nervous system.  He was admitted as an inpatient at some point prior to July 8, but then retroactively placed on observation status.  Compl. ¶¶ 66-68.  Because he was placed on observation status during his hospitalization, which lasted through July 10, 2009, his subsequent SNF care, which lasted from July 10 through July 28, 2009, was not covered by Medicare.  He also received a Medicare Summary Notice stating he was responsible for about $400 in Part B coinsurance payments for outpatient hospital claims.  Mr. Barrows was charged over $30,000 for his SNF care, which his widow paid in installments.  *Id*. ¶¶ 69-71.  Mr. Barrows appealed with representation and received a favorable decision from the Appeals Council in 2012 (ECF #68-2).

### 4.  Charles Renshaw (represented by George Renshaw)

Connecticut resident Charles Renshaw was hospitalized at Backus Hospital from May 16 through May 20, 2010 after becoming ill and falling.  Because he was placed on observation status, his subsequent care at a SNF cost about $4,725 and was not covered by Medicare.  Compl. ¶¶ 73-77.  With representation, Mr. Renshaw appealed.  The Appeals Council remanded the claim to the ALJ, who issued a favorable decision (ECF #83-2).

### 5.  Sarah Mulcahy

After experiencing a fall in June 2010, Sarah Mulcahy, a 96-year-old Connecticut resident, was hospitalized at Manchester Memorial Hospital from June 25 through June 29, 2010.  Because she was placed on observation status, her subsequent care in a SNF was not covered by Medicare.  She paid about $30,000 out of pocket for care from June 29 to October 7, 2010.

Compl. ¶¶ 78-82.  Ms. Mulcahy reached the highest level of administrative appeal with representation and received an unfavorable decision from the Appeals Council in 2014.  It stated that under CMS Ruling 1455-R, the Council could not consider whether her hospitalization should have been covered by Medicare Part A.  Def.'s 56(a)(2) Statement ¶ 157.  Ms. Mulcahy is now 102 years old (ECF #195).

### 6.      Nettie Jean Sapp (represented by Shirley Burton)

Texas resident Nettie Jean Sapp was 77 years old when she was hospitalized at Scott and White Hospital from April 21 through April 26, 2010 after a fall.  Because she was placed on observation status, her subsequent stay at a SNF, from April 26 to June 24, 2010, was not covered by Medicare.  Her family paid the bill of $9,200.  She subsequently moved to an assisted living facility because she could not afford the cost of the SNF.  She died at the assisted living facility.  Compl. ¶¶ 83-87.  Ms. Sapp's sister made several attempts to appeal without representation, including trying to use Medicare's administrative system and making requests of numerous federal and state government officials, but she never received a responsive reply from CMS and was not able to resolve the claim.  *Id.* ¶ 88.

### 7.      Florence Coffey (represented by Denise Rugman)

Massachusetts resident Florence Coffey was 74 years old and suffering from metastatic breast cancer and muscular dystrophy, which caused weakness and dizziness, when she went to South Shore Hospital on June 21, 2010 because of a fall.  She was hospitalized through June 24, 2010, but because she was on observation status, Medicare did not cover her subsequent SNF stay from June 24 through September 13, 2010.  The cost of that care was about $30,000, which her family paid.  *Id.* ¶¶ 89-93.  Ms. Coffey's family tried to appeal to Medicare without representation but received only confusing correspondence in return and they were not able to resolve the claim.  *Id.* ¶¶ 94-95.

### 8.    <u>Louis Dziadzia[2]</u>

Louis Dziadzia was 82 years old and a resident of Connecticut when he was hospitalized at the Hospital of Saint Rafael from July 6 through July 9, 2010 for back surgery.  Because he was placed on observation status, he paid about $4,340 for subsequent SNF care.  First Compl. in Intervention (ECF #53) ¶¶ 57-60.  Mr. Dziadzia appealed to Medicare with representation and exhausted administrative remedies when, in 2013, he received an unfavorable decision from the Appeals Council stating that under CMS Ruling 1455-R, a beneficiary cannot appeal the issue of whether hospital services should have been billed as inpatient Part A services (ECF #102-1).  Def.'s 56(a)(2) Statement ¶ 157.

### 9.    <u>Bernice Morse (represented by Christina Alexander)</u>

Connecticut resident Bernice Morse was 87 when she fell at home and was hospitalized at Middlesex Hospital from October 30 through November 2, 2010.  Although she was presented with a Medicare notice describing her rights as a hospital inpatient, she was actually admitted for observation status, and thus had to pay about $7,000 for subsequent SNF care.  First Compl. in Intervention ¶¶ 62-65.  Ms. Morse received a favorable resolution of her administrative appeal when she challenged her status with representation (ECF #65-3).

### 10.    <u>Loretta Jackson</u>

During the period at issue, Loretta Jackson was 73 years old and a resident of California.  Mrs. Jackson had been experiencing acute and intractable back pain when she was evaluated in the emergency room on April 15 and 16, 2009.  On April 18, 2009 she again presented to the emergency department at Santa Rosa Memorial Hospital, unable to talk and in extreme pain.  She was hospitalized through April 22, 2009, but because she was on observation status, she had

---

[2] Mr. Dziadzia has died and plaintiffs' counsel expect a representative to file a motion for substitution.

to pay $7,000 up front to gain admission to a SNF after discharge.  First Compl. in Intervention ¶¶ 67-70.  Mrs. Jackson's husband attempted to appeal without representation, both to a Medicare QIO and through the standard administrative system.  Despite pursuing these attempts for several years, Mr. Jackson could never get a resolution of the claim.  *Id*. ¶¶ 71-72; Chart at 2.

### 11.   Martha Leyanna (represented by Mary Smith)

Martha Leyanna was 85 years old and a resident of Delaware when she experienced a fall at home and was went to the emergency department of Christiana Hospital.  She was discharged home on November 16, but quickly returned the same day due to extreme pain and immobility.  This second visit to the hospital lasted through November 22, 2011.  On November 17 she was presented with a Medicare notice listing her rights as a hospital inpatient, but a few days later she was given a notice that her status had been changed from inpatient to observation.  The notice discussed financial ramifications of the status, but made no reference to any right or mechanism of appeal.  First Compl. in Intervention ¶¶ 77-79.  Although she was initially admitted as an inpatient during each of the two hospitalizations, her status was promptly changed to observation in response to a report from EHR, which contracted with the hospital to review status determinations.  Def.'s 56(a)(2) Statement ¶ 105.

Because she was switched to observation status, Ms. Leyanna had to pay around $8,000 to gain admission to a SNF and was later billed for an additional $2,600.  Ms. Leyanna's daughter made numerous phone calls to attempt to appeal the status change.  After receiving some assistance from the Senior Medicare Patrol Program, she attempted to submit an administrative appeal without representation.  Ms. Leyanna's daughter has never been able to resolve the challenge.  First Compl. in Intervention ¶¶ 80-81; Chart at 2.

8

### 12.   Irma Becker[3]

Minnesota resident Irma Becker was 93 years old when she experienced a fall at home and was hospitalized at Mercy Hospital from March 11 through March 15, 2011.  Because she was on observation status, her subsequent care in a SNF was not covered by Medicare and cost close to $4,000.  Ms. Becker made monthly payments of $100 to avoid being sued by the SNF.  First Compl. in Intervention ¶¶ 82-85.  She exhausted the administrative appeals system with representation and received an unfavorable decision from the Medicare Appeals Council in 2015, stating that under CMS Ruling 1455-R, an adjudicator may not reclassify hospital services (ECF #134-1).

### 13.   Charles Holt

Delaware resident Charles Holt was 78 when he was hospitalized at Milford Memorial Hospital from September 26 through October 3, 2011 after experiencing seizures and a fainting episode.  Although he was apparently admitted as an inpatient on September 30, Mr. Holt's son was presented with a Medicare notice on the same day stating that Medicare was not likely to pay for the admission because it was not medically necessary.  Mr. Holt's subsequent care in a SNF cost approximately $5,200.  First Compl. in Intervention ¶¶ 86-88, 90.

Mr. Holt's son attempted to pursue an appeal to a Medicare QIO contractor without representation, thinking that he was challenging his father's classification on observation status.  The hospital personnel also seemed to think Mr. Holt's son was appealing the observation status classification status, as a doctor wrote in the discharge summary that "quality assurance determined the patient should stay as observation status despite the son's appeal at two different levels."  However, the QIO did not address the dates of the observation status stay.  This was not

---

[3] Mrs. Becker has died and plaintiffs' counsel expect a representative to file a motion for substation.

discovered until a hearing with an Administrative Law Judge, who dismissed the appeal.

Mr. Holt's son tried to pursue a challenge, but was not able to resolve the claim.  *Id*. ¶¶ 86-90.

### 14.   **Dorothy Goodman**[4]

Dorothy Goodman was 91 years old and a resident of Idaho when she was hospitalized at Clearwater Valley Hospital after slipping out of her wheelchair at her assisted living facility. She hit her head and was unable to stand.  She was hospitalized from January 31 through February 3, 2014, and was found to have pelvic fractures.  She was admitted as an inpatient by the doctor who had examined her in the emergency department.  The doctor certified that she would require hospital care for at least two midnights, in accordance with Medicare's Two-Midnight Rule.  Mrs. Goodman was presented with a Medicare notice describing her rights as an inpatient.  Mrs. Goodman's status was switched to observation by a different doctor after three separate examinations of her status by EHR, which contracted with the hospital to perform patient status reviews.  Because she had been placed on observation status, she had to pay about $20,000 for her subsequent SNF care.  Second Compl. in Intervention (ECF #123) ¶¶ 64-84; Def.'s 56(a)(2) Statement ¶¶ 88-96.

Mrs. Goodman's son attempted to appeal the switch to observation status without representation.  After numerous phone calls, research, and a visit to the office of his mother's Congressman, Mr. Goodman attempted to appeal to a Medicare QIO contractor.  This resulted in a response several months later stating that Mrs. Goodman should have been notified of the status switch, but finding no error in the status itself and providing for no appeal rights. Mr. Goodman also requested that the SNF submit a claim to Medicare, and appealed that denial through the administrative system.  Second Compl. in Intervention ¶¶ 85-95; Def.'s 56(a)(2)

---

[4] Mrs. Goodman has died and plaintiffs' counsel expect a representative to file a motion for substitution.

Statement ¶¶ 97-103.  In 2016 he was able to obtain a refund for the SNF stay after an ALJ found

that the hospital had failed to notify Mrs. Goodman of her switch to observation status.  Pl.'s

Mem. in Support of Mot. for Summ. Judgment (ECF #164) at 4-5 n.1.

### III.   THE NAMED PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(a) AND RULE 23(b)(2)

#### A.   <u>Introduction</u>

Class actions are a significant and effective tool in the litigation process, for both courts

and litigants, as they advance "the efficiency and economy of litigation which is a principal

purpose of the procedure."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 159

(1982); *see also, e.g.*, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-03 (1980).

Furthermore, in cases seeking to correct the improper administration of government benefit

programs, they are particularly useful in securing effective relief to everyone harmed by the

challenged practice.  *See, e.g.*, *Matyasovszky v. Housing Authority of City of Bridgeport*, 226

F.R.D. 35, 40 (D. Conn. 2005) (quoting Newberg on Class Actions for propriety of class

certification in cases brought by participants in government benefit programs).

In another Social Security Act case, the Supreme Court stated over thirty years ago that

> class relief for claims such as those presented . . . in this case is peculiarly
> appropriate.  The issues involved are common to the class as a whole.  They turn
> on questions of law applicable in the same manner to each member of the class . .
> . .  It is unlikely that differences in the factual background of each claim will
> affect the outcome of the legal issue.  And the class-action device saves the
> resources of both the courts and the parties by permitting an issue potentially
> affecting every social security beneficiary to be litigated in an economical fashion
> under Rule 23.

*Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).  Writing for the Court, Chief Justice Rehnquist

more recently repeated and approved the *Yamasaki* language:  "[A]s the litigation history of this

case demonstrates, 'the class-action device saved the resources of both the courts and the parties

by permitting an issue potentially affecting every class member to be litigated in an economical

fashion.'" *Gratz v. Bollinger*, 539 U.S. 244, 268 n.17 (2003) (citation omitted).  Accordingly, judges in this district have not hesitated to employ the class certification device in Medicare cases that seek relief for classes of beneficiaries.[5]

Recognizing that "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility," *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (citation omitted), the Court should certify this case to proceed as a class action.

### B.      Plaintiffs meet the requirements of Rule 23(a)

The party seeking certification must satisfy the "four threshold requirements" set out in Rule 23(a) and also must demonstrate that the action is maintainable under one of the three subdivisions of Rule 23(b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *see also, e.g.*, *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994).  The district court must determine that plaintiffs meet each of the requirements of Rule 23 by considering all the relevant evidence to establish whether the preponderance of the evidence standard is satisfied.[6]  If the factors are satisfied, plaintiffs are entitled to have the class certified.  *Shady Grove Orthopedic Associates,*

---

[5] *See, e.g.*, *Sherman v. Burwell*, No. 3:15-CV-01468 (JAM), 2016 WL 4197575 (D. Conn. Aug. 8, 2016) (nationwide class certified in due process challenge to the lower levels of Medicare's administrative appeal system); *Exley v. Burwell*, No. 3:14-CV-1230-JAM, 2015 WL 3649632 (D. Conn. June 10, 2015) (nationwide class certified in challenge to delays in providing ALJ hearings in Medicare appeals); *Landers v. Leavitt*, 232 F.R.D. 42 (D. Conn. 2005) (nationwide class certified in challenge to Medicare condition of coverage); *Wilson-Coker v. Shalala*, No. 3:00CV1312 (CFD), 2001 WL 930770 (D. Conn. Aug. 10, 2001) (statewide class certified in case involving Medicare beneficiaries who are also eligible for Medicaid); *Conn. State Dep't of Social Services v. Shalala*, No. 3:99CV 2020 SRU, 2000 WL 436616 (D. Conn. Feb. 28, 2000) (statewide class certified in another case involving Medicare beneficiaries who are also eligible for Medicaid); *Fox v. Bowen*, 656 F. Supp. 1236, 1238 n.2 (D. Conn. 1987) (statewide class certified in challenge to Secretary's application of Improvement Standard to Medicare beneficiaries).

[6] *See, e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008); *In re IPO Sec. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006); *Austen v. Catterton Partners V, LP*, 268 F.R.D. 146, 148-49 (D. Conn. 2010); *Easterling v. Connecticut*, 265 F.R.D. 45, 50 (D. Conn. 2010).

*P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").  In this case, as in similar challenges to the Secretary's policies in implementing Social Security Act benefit programs, the right to certification is easily demonstrated.

> 1.    <u>"Numerosity" or "impracticability": The size of the class and other factors demonstrate that joinder is impracticable</u>

The first Rule 23(a) standard is known as numerosity or the impracticability of joinder.

*See, e.g.*, *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *see also, e.g.*, 7A Wright, Miller & Kane, Federal Practice and Procedure § 1762, at 171 (3d ed. 2005).  Its resolution depends

> on all the circumstances surrounding a case, not on mere numbers . . . .  Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.

*Robidoux*, 987 F.2d at 936 (citation omitted); *see also, e.g.*, *Matyasovszky*, 226 F.R.D. at 40; *Raymond v. Rowland*, 220 F.R.D. 173, 179 (D. Conn. 2004).  Furthermore, "[i]mpracticable does not mean impossible."  *Robidoux*, 987 F.2d at 935.

In this case, the numbers alone are sufficient to resolve the matter.  "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also, e.g.*, *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67, 78 (D. Conn. 2014).  First, plaintiffs have alleged that the class is estimated to include "at least tens of thousands of members" (Compl. ¶ 20; First Compl. in Intervention ¶ 21; Second Compl. in Intervention ¶ 15), and the statistics cited by plaintiffs in their complaints support their allegations.  In 2006, for example, CMS noted 834,000 observation status claims.  72 Fed. Reg. 66580, 66813 (Nov. 27, 2007); Compl. ¶ 48; First Compl. in Intervention ¶ 49; Second Compl.

in Intervention ¶ 55.  A 2012 study by researchers at Brown University, for example, identified

1,019,881 observation stays for 918,180 beneficiaries in 2009.  Feng, Wright, & Mor, "Sharp

Rise in Medicare Enrollees Being Held in Hospitals for Observation Raises Concerns about

Causes and Consequences," 31 *Health Affairs* 1251, 1254 (2012); Second Compl. in Intervention

¶ 57.

More recently, the Secretary's Office of Inspector General ("OIG") has found that since

the imposition 2013 Two-Midnight Rule, Medicare beneficiaries numbering in the hundreds of

thousands continue to experience lengthy outpatient hospital stays and increased costs for both

the hospitalization itself and post-hospital care.  *See generally* OIG (HHS), *Vulnerabilities*

*Remain Under Medicare's 2-Midnight Hospital Policy*, OEI-O1-02-15-00020 (Dec. 2016),

https://oig.hhs.gov/oei/reports/oei-02-15-00020.pdf.  Since the Rule went into effect, the number

of hospital inpatient stays decreased and the number of outpatient stays increased.  *Id*. at 9.  The

report also found that in FY 2014 "[h]ospitals continued to bill a significant number [of lengthy

outpatient stays] – 748,337 – despite the 2-midnight policy."  *Id* at 12.

It is also clear that many thousands of the beneficiaries placed on observation status are

harmed by the inability to appeal.  The OIG explained that "[s]ome beneficiaries in outpatient

stays – both short and long – faced financial consequences that they would not have faced had

they been in inpatient stays.  These consequences include paying more for hospital and SNF

services . . . ."  *Id*. at 12-13.  The OIG found that in FY 2014, "beneficiaries in 352,940

outpatient stays paid more [for their hospitalization] than the inpatient deductible," in other

words, more than they would have paid as inpatients.  The report also found that increasing

numbers of beneficiaries faced charges for self-administered drugs in the hospital, which would

have otherwise been included in the all-inclusive inpatient benefit.  *Id.* at 13.

Finally, in FY 2014, 633,148 beneficiaries did not qualify for post-hospital SNF services, despite having hospitalizations that lasted at least three days, because at least a portion of their stays were classified as outpatient rather than inpatient.  While this report did not determine the extent to which those beneficiaries required SNF services, it noted that a 2013 OIG report found that four percent of beneficiaries in this situation went to a SNF after discharge from the hospital, despite lacking the qualifying inpatient stay.  *Id.* at 13 n.32.  Applying that four percent figure to the FY 2014 number means over 25,000 beneficiaries lacked coverage for their very costly SNF care despite being in the hospital for at least three days (the situation of all the named plaintiffs). Even if only one half of one percent of those beneficiaries went to a SNF after hospital discharge, over 3,000 would be in the situation of the named plaintiffs, facing the most drastic financial ramifications of observation status with no method for appeal.  And this does not account for beneficiaries who required SNF care but did not receive it because they could not afford it.

"[C]ourts may make common sense assumptions to support a finding of numerosity." *Raymond*, 220 F.R.D. at 178 (citation omitted).  The available information demonstrates that the class is sufficiently large to preclude joinder as a practical possibility.  *See Robidoux*, 987 F.2d at 935 (plaintiffs need not present "evidence of exact class size or identity of class members to satisfy the numerosity requirement"); *see also, e.g.*, *Clark v. Astrue*, 274 F.R.D. 462, 471 (S.D.N.Y. 2011) (inferring satisfaction of numerosity requirement from agency statistics); *State of Conn. Office of Protection & Advocacy for Persons with Disabilities v. Connecticut (Office of Protection & Advocacy)*, 706 F. Supp. 2d 266, 287 (D. Conn. 2010) (finding it "permissible for the plaintiffs to rely on reasonable inferences drawn from the available facts") (citation omitted). There can be no doubt that at any given time, more than forty beneficiaries around the country

are being harmed in some way by being placed on observation status without an opportunity to appeal that classification. *See, e.g.*, *Kaye*, 300 F.R.D. at 78 (no reason to assume that class will be "below the threshold of forty"). On that basis alone, subsection 23(a)(1) is met.

Furthermore, the other indicia of impracticability leave no doubt that the subsection is met. First, it would be extraordinarily inefficient to have numerous lawsuits on this issue, as they would all focus on the same point, the lack of an opportunity to appeal placement on observation status. It would "serve[] judicial economy" to allow this case to proceed as a class action. *Robidoux*, 987 F.2d at 936.

Second, the difficulty for individuals to bring suit or to join in this one is real. By definition the class members are elderly and disabled and are physically in poor condition, as evidenced by the situations of named plaintiffs, several of whom died before or since this action was filed. "[I]ndividual suits [are] difficult to pursue," *id.*, because most beneficiaries are not financially well off.[7] Furthermore, they reside throughout the country, further exacerbating the difficulty of joinder. *See id.* ("potential class members are distributed over the entire area of Vermont"). These practical impediments inherent in the composition of the class render it virtually impossible for most class members to file individual cases or otherwise to participate.

Finally, as plaintiffs seek declaratory and injunctive relief for both present and future members of the class whose composition is constantly fluctuating, class wide relief is particularly appropriate. *Id.* For these reasons, plaintiffs satisfy the first component of Rule 23(a).

---

[7] "Forty-two percent of Medicare's beneficiaries 65 and older have incomes at 200 percent of the poverty level or below. Only one-fourth (27%) have incomes over four times the poverty level." Davis, Schoen, and Bandeali, *Medicare: Fifty Years of Ensuring Coverage and Care* at 12 (The Commonwealth Fund, April 2015), http://www.commonwealthfund.org/~/media/files/publications/fund-report/2015/apr/1812_davis_medicare_50_years_coverage_care.pdf.

16

2.   **Rule 23(a)(2) and (3): Common questions of law and fact exist, and the claims of the named plaintiffs are typical of the claims of the class members**

The next two factors, commonality and typicality,

> tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3) . . . .  The crux of both requirements is to ensure that "maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Marisol A.*, 126 F.3d at 376 (citations omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 349 n.5 (2011); *Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).

"Courts have found that 'the test for commonality is not demanding' . . . ."  *Raymond*,

220 F.R.D. at 179 (citation omitted), and that general guideline has not been altered by the

decision in *Wal-Mart*.  *See, e.g.*, *Linsley v. FMS Inv. Corp.*, 288 F.R.D. 11, 15 (D. Conn. 2013).

"The commonality requirement is met if plaintiffs' grievances share a common question of law

or fact."  *Marisol A.*, 126 F.3d at 376.

> Rule 23(a)(2) requires only that common questions exist "at the core of the cause of action alleged" . . . .  Where the question of law involves "standardized conduct of the defendant toward members of the proposed class the commonality requirement of Rule 23(a)(2) is usually met."

*Easterling*, 265 F.R.D. at 52 (citations omitted).  "Minor factual differences will not preclude

class certification if there is a common question of law."  *Office of Protection & Advocacy*, 706

F. Supp. 2d at 287.  Only a single common question, of law or fact, is required to satisfy the

commonality standard.  *Wal-Mart*, 564 U.S. at 358.

The *Wal-Mart* decision reminded courts to ensure "that the class members 'have suffered

the same injury'" and that their claims "depend upon a common contention . . . of such a nature

that it is capable of classwide resolution – which means that determination of its truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at

349-50 (citation omitted).  The Court added:  "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* at 350 (citation omitted).  Judges in this district have recognized these points as the crux of the Supreme Court's commonality analysis in *Wal-Mart*.  *See, e.g.*, *Exley*, 2015 WL 3649632, at *4-5; *Haddock v. Nationwide Fin. Services*, 293 F.R.D. 272, 279 (D. Conn. 2013); *Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 353 (D. Conn. 2013); *Linsley*, 288 F.R.D. at 15; *Amara v. Cigna Corp.*, 925 F. Supp. 2d 242, 261-62 (D. Conn. 2012), *aff'd*, 775 F.3d 510 (2d Cir. 2014); *Maziarz v. Housing Authority of the Town of Vernon*, 281 F.R.D. 71, 81-82 (D. Conn. 2012).

In this case, as in others involving the failure of a government agency to meet its fundamental procedural obligations, there can be little doubt that commonality is satisfied.  As noted in a Second Circuit decision involving another benefit program, "the questions of law, which predominantly focus on whether the behavior of the defendants violated the [relevant statute and provisions] of the Constitution, are, by necessity, common to the class because they do not depend on the plaintiff-variable but on the defendants, who are a constant."  *Comer*, 37 F.3d at 796-97.

Here, there are common questions of both law and fact.  The common question of law is whether the Secretary may fail to provide a method of appeal for beneficiaries placed on observation status, thus violating the Due Process Clause.  In the most basic sense, this is the "common issue the resolution of which will advance the litigation."  *Petrolito v. Arrow Fin. Servs., LLC*, 221 F.R.D. 303, 309 (D. Conn. 2004) (citation omitted).  A determination that the existing lack of appeal procedures does not comport with due process will resolve the litigation for all class members, which is the focus in *Wal-Mart*.  More specifically, the Court will be

18

examining the components of due process identified by the Second Circuit and established case law:  the existence of a protected property interest, state action, and what process is due. *Barrows*, 777 F.3d at 113 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)).

A common question of fact is that all class members are Medicare beneficiaries who were placed on observation status and, as a result, were covered under Part B, thus requiring increased out-of-pocket expenses for the hospitalization and/or follow-up SNF care, without an adequate opportunity to appeal their status determination.  "[T]he lawsuit focuses on the behavior of the defendants and not that of the plaintiffs."  *Comer*, 37 F.3d at 797.  While each class member has his or her individual medical needs and experiences, they share the common injury of deprivation of due process of law, and correction of that injury is the purpose of the lawsuit.  *See, e.g.*, *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (noting that common agency policies and practices can be the "glue" required to bring common constitutional claims on behalf of a plaintiff class with individualized medical needs and circumstances).  Moreover, in defending the action so far, the Secretary has asserted legal and factual positions that apply to all named plaintiffs and class members, for instance by claiming that the current administrative review system is sufficient because hospitals can be relied on to protect beneficiaries' interests.  Def.'s Opp. to Pl.'s Mot. for Summ. Judgment (ECF #176 at 19-21).  Commonality is met.

The "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux*, 987 F.2d at 936; *see also, e.g.*, *Marisol A.*, 126 F.3d at 376; *Maziarz*, 281 F.R.D. at 82; *Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 223 (D. Conn. 2009).  "In government benefit class actions, the typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation, or policy as

19

class members." *Matyasovszky*, 226 F.R.D. at 42 (citations omitted).  Again, this standard is easily satisfied, as the claims of the named plaintiffs and the class members all arise from the Secretary's practice of not providing an opportunity for appeal of placement on observation status.  Further the named plaintiffs and the class members are making identical arguments to demonstrate that the Secretary's policy is illegal.

"When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37; *see also*, *e.g.*, *Exley*, 2015 WL 3649632, at *5; *Maziarz*, 281 F.R.D. at 82; *Matyasovszky*, 226 F.R.D. at 42.  By proving their claims, the named plaintiffs will necessarily prove the class members' claims as well.  Typicality is therefore met.

### 3.      Rule 23(a)(4): The named plaintiffs will protect the interests of the class

The adequacy of representation requirement "is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol A.*, 126 F.3d at 378; *see also Wal-Mart*, 564 U.S. at 349 n.5 (adequacy of representation requirement tends to merge with the commonality and typicality requirements).  The "adequacy requirement is meant to ensure zealous advocacy for the class." *Kaye*, 300 F.R.D. at 79.  The standard for determining whether the requirement is met

> "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation" . . . .  The focus is on uncovering "conflicts of interest between named parties and the class they seek to represent" . . . .  In order to defeat a motion for certification, however, the conflict "must be fundamental."

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citations omitted); *see also, e.g.*, *Marisol A.*, 126 F.3d at 378; *Exley*, 2015 WL 3649632, at *6; *Maziarz*, 281 F.R.D. at 82.

   With respect to the first prong, the named plaintiffs' interests are not antagonistic to those of the class members because all suffer from the same practice of the Secretary, the deprivation of a timely and meaningful opportunity to appeal placement on observation status. They seek relief requiring the Secretary to take corrective measures that would benefit the class members as well as the named plaintiffs. *Accord Marisol A.*, 126 F.3d at 378. "[B]ecause there are legal issues common to the class, the plaintiff[s] . . . will be protecting the interests of the class by advancing their own legal interests in the case . . . ." *Doe v. Bridgeport Police Dept.*, 198 F.R.D. 325, 333 (D. Conn. 2001). The class members' rights will be fully protected and enforced by the provision of the relief required by the named plaintiffs.

   On the second prong, plaintiffs' counsel have demonstrated their ability to handle this litigation by vigorously representing Medicare beneficiaries, as well as beneficiaries of other Social Security Act programs, for many years.[8] Because of this extensive relevant experience, plaintiffs' counsel are usually not questioned on the issue of adequacy of representation.[9]

---

   [8] A representative sample of reported Medicare decisions on which plaintiffs' counsel have acted as lead or co-counsel includes: *Exley*, 2015 WL 3649632; *Jimmo v. Sebelius*, No. 5:11-cv-17, 2011 WL 5104355 (D. Vt. Oct. 25, 2011); *Machado v. Leavitt*, 542 F. Supp. 2d 185 (D. Mass. 2008); *Situ v. Leavitt*, 240 F.R.D. 551 (N.D. Cal. 2007); *Landers v. Leavitt*, No. 3:04-cv-1988, 2006 WL 2560297 (D. Conn. Sept. 1, 2006), *aff'd*, 545 F.3d 98 (2d Cir. 2008); *Gray Panthers Project Fund v. Thompson*, 273 F. Supp. 2d 32 (D.D.C. 2002); *Healey v. Thompson*, 186 F. Supp. 2d 105 (D. Conn. 2001), *aff'd in part, vacated and remanded in part sub nom. Lutwin v. Thompson*, 361 F.3d 146 (2d Cir. 2004); *Fox*, 656 F. Supp. 1236. Wilson Sonsini Goodrich & Rosati also has substantial class action experience and was co-counsel in the *Jimmo* and *Situ* cases cited above.

   [9] Accordingly, and in order to avoid unnecessary filings, they are not filing declarations in support of their stated experience. *See, e.g., Raymond*, 220 F.R.D. at 180 (court relies on

C.    **Plaintiffs meet the requirements of Rule 23(b)(2)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods.*, 521 U.S. at 614.  Under (b)(2), "[c]lass certification is appropriate where the defendant has acted or refused to act on grounds generally applicable to the class, thereby making injunctive or declaratory relief appropriate." *Marisol A.*, 126 F.3d at 378.  "The entire purpose behind Rule 23(b)(2) is to resolve disputes concerning the existence of a policy and practice of discrimination against a broad class of individuals." *Office of Protection & Advocacy*, 706 F. Supp. 2d at 289 (citation omitted).

Again, there can be little doubt that the named plaintiffs meet this standard.  This case presents the paradigm of a Rule 23(b)(2) class action, as "plaintiffs seek injunctive relief and they predicate the lawsuit on the defendants' acts and omissions with respect to" the class, *Comer*, 37 F.3d at 796, namely, the Secretary's practice of failing to provide an appeal process to beneficiaries who have been placed on observation status.  Since the "deficiencies . . . stem from central and systemic failures" by the Secretary, class certification under Rule 23(b)(2) is the appropriate vehicle for resolving the matter.  *Marisol A.*, 126 F.3d at 378; *see also Yamasaki*, 442 U.S. at 700-01 ((b)(2) class appropriate in challenge to procedures used in Social Security Act case).

IV.    **PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL**

Rule 23(g) requires a court to appoint "class counsel" when a class is certified.  Fed. R. Civ. P. 23(g)(1).  Closely tracking the language of Rule 23(a)(4), Rule 23(g)(4) requires that an attorney serving as class counsel "fairly and adequately represent the interests of the class."

---

pleadings to conclude that plaintiffs' counsel are competent to handle the litigation); *Doe*, 198 F.R.D. at 332-33 (same).

22

Plaintiffs have already shown how their attorneys, based on their histories of experience with Medicare and other Social Security Act programs, will fairly and adequately represent the class.

Rule (g)(1)(A) directs the Court to consider

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory Committee Notes to the 2003 amendments that added subsection (g) state that "[i]n evaluating prospective class counsel, the court should weigh all pertinent factors.  No single factor should necessarily be determinative in a given case."

Considering these factors, it is clear that plaintiff's counsel have fully and completely identified the legal issues.  Their experience, as reflected in the sample of decisions listed in footnote 8, shows that they have extensive backgrounds in class actions, in the legal and factual issues raised by this case, and in Medicare law.  Furthermore, the individual attorneys will have behind them the resources of two national public interest organizations that for many years have specialized in the rights of the elderly and disabled and advocated aggressively on their behalf, as well as the resources of a private law firm that has often partnered with such organizations. There can be little doubt that they will meet the goal set out in the Advisory Committee Notes of "provid[ing] the adequate representation" for the class.

Plaintiffs' attorneys' experience, dedication, and knowledge are fully reflected in their history of advocacy on behalf of the elderly and disabled.  No reason presents itself as to why they should not be appointed as class counsel.  The requirements of Rule 23(g) are satisfied.  *See,*

*e.g.*, *Exley*, 2015 WL 3649632, at *8 (appointing attorneys from the Center for Medicare Advocacy as class counsel in a Medicare class action).

## V.     CONCLUSION

As all the requirements of Rule 23(a) and subdivision (2) of Rule 23(b) are met, the Court should certify the class and appoint class counsel.

 DATED:  March 3, 2017                              Respectfully submitted,

*/s/ Alice Bers*
ALICE BERS
Federal Bar No. ct28749
abers@medicareadvocacy.org
GILL DEFORD
Federal Bar No. ct19269
gdeford@medicareadvocacy.org
JUDITH A. STEIN
Federal Bar No. ct08654
jstein@medicareadvocacy.org
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
(860) 456-7790
Fax (860) 456-2614

TOBY S. EDELMAN
*pro hac vice*
tedelman@medicareadvocacy.org
Center for Medicare Advocacy, Inc.
1025 Connecticut Ave., NW, Suite 709
Washington, D.C. 20036
(202) 293-5760
Fax (202) 293-5764

ANNA RICH
*pro hac vice*
arich@justiceinaging.org
KEVIN PRINDIVILLE
*pro hac vice*
kprindiville@justiceinaging.org
Justice in Aging
1330 Broadway, Suite 525
Oakland, CA 94612
(510) 663-1055

ERIC CARLSON
*pro hac vice*
ecarlson@justiceinaging.org
Justice in Aging
3660 Wilshire Blvd., Suite 718
Los Angeles, CA 90010
(213) 639-0930
Fax (213) 550-0501

LUKE A. LISS
Bar No. phv07485
lliss@wsgr.com
DYLAN G. SAVAGE
Bar No. phv07487
dsavage@wsgr.com
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
Fax (650) 565-5100

JASON B. MOLLICK
Bar No. phv07486
jmollick@wsgr.com
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Fl.
New York, NY 10019
(212) 999-5800
Fax (212) 999-5899

*Attorneys for Plaintiffs and*
*Intervenor-Plaintiffs*