## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHRISTINA ALEXANDER,

                 Plaintiffs,

      v.

ALEX M. AZAR II, Secretary of Health and
Human Services,

                 Defendant.

Case No.:  3:11-cv-1703-MPS

## PLAINTIFFS' RESPONSE TO THE COURT'S NOVEMBER 26, 2018 ORDER

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ............................................................................................................................ 6

I.    PLAINTIFFS PLEADED THE TWO-MIDNIGHT RULE IN MAY 2015 AND
      THEREFORE DO NOT SEEK LEAVE TO AMEND ..................................................... 6

II.   THE SECRETARY HAS BEEN ON NOTICE OF PLAINTIFFS' THEORY
      INVOLVING THE TWO- MIDNIGHT RULE SINCE MAY 2015. .............................. 7

III.  THIS CASE SHOULD PROCEED TO TRIAL AS PREVIOUSLY
      SCHEDULED.................................................................................................................. 10

Plaintiffs respectfully submit the following response to the Court's Order entered on November 26, 2018 (ECF No. 358) ("Nov. 26 Order"), which inquired "whether Plaintiffs will seek to amend the complaint in light of the discussions at the hearing [on November 26, 2018], *i.e.*, to pursue a claim that one or more plaintiffs has a property interest based on the two-midnight rule, or whether they instead intend to rely on the [123] Second Intervenor Complaint for such a theory."

## INTRODUCTION

The Second Complaint in Intervention ("Intervenor Complaint") (ECF No. 123) contains detailed allegations relating to the Two-Midnight Rule.  Additionally, a review of relevant transcripts and motions since the 2015 filing of the Intervenor Complaint demonstrates that Plaintiffs have relied on the Two-Midnight Rule as a source of fixed or objective criteria *for years*, including in their 2015 Intervenor Complaint, their 2016 summary judgment briefs, and in relevant transcripts.  The record further demonstrates that the Secretary expressly argued that the Two-Midnight Rule did not create a protected property interest when he unsuccessfully moved for summary judgment in 2016, rendering any suggestion by the Secretary that he had no prior opportunity to brief this argument unfounded.  Accordingly, Plaintiffs believe that this case should proceed immediately to trial and do not intend to further amend their pleadings.

The Two-Midnight Rule went into effect in late 2013, around the time that Plaintiffs appealed this Court's grant of a motion to dismiss to the Second Circuit.  Following the Second Circuit's Order and remand, Plaintiffs filed the Intervenor Complaint in May 2015.  The Intervenor Complaint includes detailed and lengthy allegations regarding the Two-Midnight Rule.  In particular, the Intervenor Complaint identifies and explains the Two-Midnight Rule, and specifically alleges that "many hospitals are now using both the two-midnight rule and

commercial screening tools to determine beneficiaries' classification." Intervenor Complaint ¶¶ 37-45. The Intervenor Complaint then describes how the Two-Midnight Rule impacted the hospitalization of Mrs. Dorothy Goodman, which occurred in early 2014 when the Two-Midnight Rule was is effect. Specifically, the Intervenor Complaint explains that Mrs. Goodman's doctor "certif[ied] that services for an estimated two midnights[] or longer [were] medically necessary . . . in accordance with applicable regulations"; she was changed to observation status after a third-party review firm indicated her expected length of stay was less than two midnights. *See id.* ¶¶ 64-98.

To that end, the Secretary argued in its 2016 motion for summary judgment that the "new standard" of the Two-Midnight Rule could not create a protected property interest. The Two-Midnight Rule was addressed by both parties in their respective briefs on both cross motions for summary judgment in 2016, at oral argument before the Court, and in supplemental briefing submitted thereafter at the Court's request. At oral argument, Plaintiffs explicitly stated that they were relying upon "three sources of [fixed or objective] criteria," one of which was the Two-Midnight Rule, and further specified that the appeal rights they seek in this case would allow a beneficiary like the intervenor-plaintiff, Mrs. Goodman, to "show in a hearing that her doctor certified that she would require care in a hospital" and "point to material in her medical record that supported that expectation." Dec. 15, 2016 Tr. at 77-80.

The Two-Midnight Rule also came up at a telephone conference with the Court in June 2018, where Plaintiffs reiterated they had evidence of beneficiaries being erroneously deprived of Medicare Part A inpatient coverage under the Two-Midnight Rule. At that conference Plaintiffs specifically argued to this Court that while we "contend Medicare had established . . . the screening tool [and] accepted people who passed screening tools . . . as inpatient," as a result

of changes in policy "the two midnight rule and the way that that rule has been enforced" has become an important element of Plaintiffs' case. *See* June 28 Tr. at 16-17 (discussing, *inter alia*, how Plaintiff Dorothy Goodman had been "erroneously deprived" under criteria established by the Two-Midnight Rule).

In the June 2018 conference, the Court stated:  "I'm not sure the fact that the Government is changing various of its policies while the litigation is ongoing, which isn't surprising since the litigation has been going on for seven years, is a reason to postpone the trial here or to have another round of summary judgment briefings . . . ." *Id*. at 39-40.  The Court's views were correct then and remain correct today.

Nothing has happened since June 2018 that should cause the Court's view on that issue to change.  Plaintiffs' reliance on the Two-Midnight Rule certainly has not changed – it has been clear and constant since 2015.  There is no need for filing an amended complaint or additional motion practice.  Justice delayed is justice denied, and seven years is far too long for Plaintiffs – among the most vulnerable members of our society – to wait for this case to go to trial.

This Court has already found issues of material fact regarding property interest on summary judgment based on the Intervenor Complaint that raised and relied on the Two-Midnight Rule.  Therefore, the Court should reject the Secretary's continued efforts to delay this case.  Instead, the Court should reinstate the trial date so that Plaintiffs can stop the Secretary's on-going denial of Plaintiffs' core due process rights.

## BACKGROUND

In September 2013, this Court dismissed Plaintiffs' due process claim pursuant to the Secretary's motion to dismiss, finding that Plaintiffs failed to allege a property interest where the Medicare Policy Manual stated that "the decision to admit a patient is a complex medical

judgment" and thus "vest[ed] substantial discretion in the treating physician to determine whether a patient should be admitted." *Bagnall v. Sebelius*, No. 3:11-cv-1703 (MPS), 2013 WL 5346659, at *21, 22 (D. Conn. Sept. 23, 2013).  Plaintiffs timely appealed.

The Second Circuit vacated and remanded, concluding that in relying on the language in the Medicare Policy Manual, the Court "accept[ed] as true the Secretary's assertion that a hospital's decision whether to admit a Medicare beneficiary as an 'inpatient' was left to the discretion and 'medical judgment' of the treating physician" and thus made a finding of fact impermissible on a motion to dismiss. *Barrows v. Burwell*, 777 F.3d 106, 108, 114 (2d Cir. 2015).  Recognizing that Plaintiffs' complaint contained "plausible allegations that, increasingly, admission decisions are not left to the discretion or judgment of treating physicians," the Second Circuit indicated that Plaintiffs could demonstrate a protected property interest by "prov[ing] their allegation that CMS 'meaningfully channels' the discretion of doctors by providing fixed or objective criteria for when patients should be admitted . . . ." *Id.* at 114, 115.

A few months later, Plaintiffs filed the Intervenor Complaint in May 2015, adding allegations relating to the Two-Midnight Rule.  Following a period of discovery on property interest pursuant to the Second Circuit's mandate, the parties filed cross motions for summary judgment in the summer of 2016.  As discussed in greater detail below, both parties raised and discussed the Two-Midnight Rule in their summary judgment briefs, as well as at oral argument and in supplementary briefing submitted thereafter.  *See infra* pp. 8-10.  This Court denied both parties' summary judgment motions in February 2017.  ECF No. 196.

In accordance with the Second Circuit's mandate, the parties proceeded to discovery on the other two factors in the due process analysis:  state action and what process is due (*Mathews v. Eldridge* factors).  In June 2018, the Secretary indicated he wished to move again for summary

judgment on protected property interest, as well as on part of the second *Mathews v. Eldridge* factor, namely, the risk of erroneous deprivation.  ECF No. 305.  Following a submission by the Plaintiffs and a telephonic conference with the Court, the Court issued an Order "prohibit[ing] the defendant from filing a second motion for summary judgment as to issues *previously addressed by the Court, specifically, the issues related to a property interest.*  As discussed on the call, it is simply too late to file what would likely amount to a motion for reconsideration of the Court's summary judgment decision."  ECF No. 311 ("June 28 Order") (emphasis added).

Contrary to the Court's Order and specific instructions, the Secretary's second summary judgment motion raised many of the same issues that had been the subject of the prior summary judgment motion, now under the guise of the risk of erroneous deprivation.  The Secretary additionally filed a motion for class decertification.  The Court set oral argument for November 26, 2018, instructing the parties to be prepared to address the issue of potential trial bifurcation as well as the pending motions.

At the November 26, 2018 hearing, the Secretary seemed to assert that Plaintiffs' allegations involving the Two-Midnight Rule (as opposed to a focus on screening tools) were a "moving target" that had not previously substantively been at issue in the case.[1]  Following the hearing, the Court issued an order vacating the trial date and directing Plaintiffs to file notice on the docket stating whether they would seek to amend the operative Complaint with allegations regarding the Two-Midnight Rule.  Nov. 26 Order.  The Court stated it would endeavor to rule on any motion to amend as soon as practicable and would "determine the appropriate scope of any further summary judgment briefing at that time."  *Id.*

---

[1] As of the date of this submission, Plaintiffs have not received a transcript of the November 26, 2018 hearing, but will supplement and/or include specific statements from the hearing when the transcript is received, if needed.

## ARGUMENT

I.   **PLAINTIFFS PLEADED THE TWO-MIDNIGHT RULE IN MAY 2015 AND THEREFORE DO NOT SEEK LEAVE TO AMEND**

As indicated above, because the Two-Midnight Rule has been a central part of this case – including being pleaded in the Intervenor Complaint, being the subject of extensive discovery by the  parties, as well as being part of the prior summary judgment and argument to this Court – Plaintiffs do not seek leave to amend their Complaint.  Moreover, because the prior summary judgment round on property interest included argument on the Two-Midnight Rule, Plaintiffs believe the prior trial date should be reinstated and no additional motion practice on this issue is necessary or appropriate.

As summarized above, the Second Intervenor Complaint filed in May 2015 describes the Secretary's establishment of the Two-Midnight Rule and alleges that "many hospitals are now using both ***the two-midnight rule*** and commercial screening tools ***to determine beneficiaries' classification***."  Intervenor Complaint ¶¶ 37-45 (emphasis added).  The Intervenor Complaint further alleges facts relating to Mrs. Dorothy Goodman's hospitalization; her inpatient order was changed to observation status after a third-party review firm indicated her expected length of stay was less than two midnights.  *See id.* ¶¶ 64-98.[2]

---

[2] At the November 26, 2018 hearing, the Court urged Plaintiffs to delineate whether screening tools remained a part of the case going forward.  To be clear, Plaintiffs view the Two-Midnight Rule as the current, operative standard and as comprising fixed or objective criteria that are a source of a protected property interest.  However, that should not be taken to mean that screening tools are no longer utilized.  As Plaintiffs have alleged and argued, such tools continue to be used in conjunction with the Two-Midnight Rule. *See, e.g.*, Intervenor Complaint ¶¶ 44, 66-84; Pls. Opp. to SJ (ECF No. 331) at 7.  This was reiterated during the most recent round of discovery. *See, e.g.*, Plaintiffs' Response to Statement of Facts ¶ 32 (ECF No. 331-1) (citing, *inter alia*, Pls. Exs. 45 & 46, hospital deposition testimony and utilization review documents showing use of screening tools and Two-Midnight Rule).

In its June 28, 2018 Order, the Court stated that briefing on the second *Eldridge* factor would help clarify "what type of evidentiary showing Plaintiffs would make" and the "criteria . . . [that would] govern" at the hearings they are seeking.  June 28 Order.  Plaintiffs thus addressed the governing criteria in the introduction to their memorandum in opposition to the Secretary's second summary judgment motion, and included three examples of how beneficiaries could make an evidentiary showing based on those criteria.  Pls. Opp. to SJ at 1, 21-25 (including discussion of the Two-Midnight Rule as criteria in the appeal process and hearings Plaintiffs seek).

Nothing in the Court's Order, however, indicated that there was to be any argument or discussion relating to their pleading of the Two-Midnight Rule and whether those pleadings and previous arguments had adequately established a protected property interest.  To the contrary, the Court had specifically prohibited another summary judgment motion on the protected property interest issue.

Accordingly, as the Two-Midnight Rule has already been pleaded, has been an active issue in this case since May 2015, and was included among the issues the parties briefed in connection with the first round of summary judgment, Plaintiffs believe it is neither necessary nor appropriate to file an amended complaint.

## II.     THE SECRETARY HAS BEEN ON NOTICE OF PLAINTIFFS' THEORY INVOLVING THE TWO- MIDNIGHT RULE SINCE MAY 2015.

That Plaintiffs pleaded the Two-Midnight Rule in their Intervenor Complaint, and that the Court denied the Secretary's first summary judgment motion based on that Complaint, are, by themselves, sufficient to preclude the Secretary from making yet another summary judgment motion on the protected property interest issue.  Further, in light of the pleadings in this case,

including the parties' prior briefs and oral arguments, it is simply incorrect for the Secretary to

imply that Plaintiffs' allegations regarding the Two-Midnight Rule are a "moving target."

The record here is clear and indisputable: the Secretary has been on notice of Plaintiffs'

allegations about the Two-Midnight Rule since May 2015, and has attacked Plaintiffs'

contentions about the Two-Midnight Rule since at least 2016.  The Secretary's arguments can be

found in numerous pleadings.  For example:

- The Secretary's 2016 summary judgment moving brief described the Two-Midnight Rule as the "new standard" and the "new rule" governing inpatient admission.  Def. Br. (ECF No. 160-1) at 9.  At the same time the Secretary claimed that the Two-Midnight Rule does not set forth fixed or objective criteria for purposes of a property interest because it (1) "continues to emphasize that admission decisions are clinical determinations," and (2) "provides an escape hatch" allowing inpatient admission even if the Rule is not satisfied.  *Id*. at 23-24 n.7.

- Plaintiffs challenged the Secretary's contention in their opposition brief, repeatedly relying on the Two-Midnight Rule – including in Mrs. Goodman's case – as one of the criteria CMS (the Medicare agency) has set forth for inpatient admission.[3]

- The Secretary's Statement of Undisputed Material Facts accompanying his motion contended that the decision to admit a patient as an inpatient remained a complex medical judgment following institution of the Two-Midnight Rule.  Def. SOF (ECF No. 160-2) ¶ 4.  Plaintiffs disputed that allegation and referred to their own Statement of Facts, which contained multiple citations to the evidentiary record demonstrating that the Two-Midnight Rule was used as a criterion in determining propriety of inpatient admission.  *See, e.g.*, Pls. SOF (ECF No. 164-1) ¶¶ 8-11, 32, 79, 89-90, 103, 120.

---

[3] *See, e.g.*, Pls. Opp. Br. (ECF No. 163) at 25 (stating that if Ms. Goodman had the right to an appeal to show that her admission "met the Two-Midnight Rule," she could have presented "records *showing that she did in fact require hospital care for a period that exceeded two midnights*") (emphasis added); 26 (identifying a "basic checklist" of criteria for failing inpatient admission as "1) not an 'inpatient only' procedure, 2) no comorbidities or complications, 3) did not require two midnights' worth of time," and characterizing those factors as "criteria established by the Secretary"); 27 (arguing that beneficiaries "should be able to challenge erroneous decisions using the same standards that CMS applies," including whether it is "reasonable to expect that the hospital care will cross two midnights based on the medical record.").

- At oral argument on the motions, Plaintiffs reiterated that they were relying on "three sources of criteria" that the Secretary set forth, one of which was "the two midnight rule since 2013." Plaintiffs further explained that the appeal rights they are seeking would allow a beneficiary like Mrs. Goodman to "show in a hearing that her doctor certified that she would require care in a hospital" and "point to material in her medical record that supported that expectation." Dec. 15, 2016 Tr. at 77-80.

- Plaintiffs once again raised the Two-Midnight Rule in supplemental briefing submitted after argument (ECF No. 193).[4]

While the Secretary chose to focus on screening tools in his own briefs in connection with the first round of summary judgment, that choice in no way negates that Plaintiffs raised and relied on the Two-Midnight Rule in both the Intervenor Complaint and their briefs.[5] Following denial of both parties' motions, the Secretary could have – but did not – seek clarification or reconsideration of the Court's decision. Given this, the Secretary has no legal or factual basis to reargue the issue of whether the Two-Midnight Rule creates a protected property interest *years* after the Court denied his motion.

As described above, the Two-Midnight Rule came up again at the June 28 conference in 2018, where Plaintiffs reiterated they had evidence of beneficiaries being erroneously deprived

---

[4] *See* Pls. Supp. Br. (ECF No. 193) at 14 ("Plaintiffs note that hospitals look not only to the screening tools as a source of criteria for a protected property interest, but also to the inpatient-only list and, since 2013, the Two-Midnight Rule, which applied to Mrs. Goodman and is now Medicare's standard for appropriate inpatient stays."); *see also id.* at 14 n.11 ("Plaintiffs have shown three sources of criteria established by the Secretary that create an enforceable expectation for inpatient coverage and could be utilized in a hearing (the Two-Midnight Rule, inpatient-only list, and commercial screening guides).").

[5] Plaintiffs made additional arguments on the Two-Midnight Rule in their cross motion for summary judgment – filed concurrently with their opposition to Secretary's motion – including that the Two-Midnight Rule was one source of fixed or objective criteria set by the Secretary. *See* Pls. Cross Mot. (ECF No. 164) at 39 ("Under policies and practices currently in effect, the analysis would be 1) whether the service is on the inpatient only list, 2) whether the admission meets a commercial screening tool's requirements for inpatient status, and 3) ***whether objective information in the medical record supports an expectation that the beneficiary requires hospital care that crosses at least two midnights***.") (emphasis added). The Secretary did not respond to this argument.

of a protected property interest under the Two-Midnight Rule and that while Plaintiffs "contend

Medicare had established . . . the screening tool . . . [and] accepted people who passed screening

tools . . . as inpatient," "[i]t's also now more recently the two midnight rule and the way that that

rule has been enforced." June 28 Tr. at 16-17.

In short, Plaintiffs' theories on the Two-Midnight Rule have been clear and consistent for

years. While the Secretary has attempted to avoid trial by claiming changes in underlying

agency policies necessitate continuous motion practice, the on-going violation of fundamental

due process rights continues, is causing Plaintiffs irreparable injury, and can even lead to death.

This Court previously recognized that the Secretary's decision to use purportedly different

policies as a way to avoid trial is not acceptable:

> THE COURT:  Let me ask you this.  There's no doubt there's been a lot of changes in the
> policies in this case that the parties have advised me of.  What's to suggest that's going to
> stop? . . .  I'm not sure the fact that the Government is changing various of its policies
> while the litigation is ongoing, which isn't surprising since the litigation has been going
> on for seven years, is a reason to postpone the trial here or to have another round of
> summary judgment briefings which, let's face it, is in effect like a paper trial, and then to
> have a bench trial.  This just doesn't make a lot of sense to me in light of the pattern that
> we've seen here.

June 28 Tr. at 39-40.

The time for pretrial proceedings has long since ended.  Plaintiffs' pleadings regarding

the Two-Midnight Rule are sufficient to allow the Court to adjudicate a trial to determine

whether the Secretary has established and enforced rules regarding classification of hospital

claims and whether Plaintiffs are entitled to an appeal.

## III.    THIS CASE SHOULD PROCEED TO TRIAL AS PREVIOUSLY SCHEDULED

Because Plaintiffs' Intervenor Complaint contains the operative allegations and the

Secretary and the Court were on notice of them prior to the last summary judgment decision,

after seven years it is time for this case to proceed promptly to trial.  At the June 28 Conference

this Court explicitly stated that it would not permit continued motion practice over the same

issues:

> THE COURT:  I'm not going to have a successive motion for summary judgment for
> issues I've already decided.  I don't have to allow you to do that and I'm not going to
> allow you to do that.  So we're not going to relitigate the property interest on summary
> judgment.  I can tell you that much for sure.

June 28 Tr. at 29.

> . . .

> THE COURT:  I'm not going to have a second summary judgment motion filed on the
> property interest.  You have a right to file a summary judgment motion, but you don't
> have a right to file summary judgment motions on issues that were previously litigated.
> There's no question that we litigated summary judgment as to the property interest and
> I'm not going to have another summary judgment motion on that.  The time for filing [a]
> motion for reconsideration is long past.  I'm not going to have a summary judgment
> motion on that.

*Id.* at 42.

The Court's Order following this Conference repeated this point: "[T]he Court prohibited

the defendant from filing a second motion for summary judgment as to issues previously

addressed by the Court, specifically, the issues related to a property interest.  As discussed on the

call, it is simply too late to file what would likely amount to a motion for reconsideration of the

Court's summary judgment decision."  June 28 Order.  Because the Secretary has been on notice

of the Two-Midnight Rule since May 2015 and addressed this issue in his own summary

judgment brief in 2016, there is no reason for the Court to depart from its prior Order prohibiting

repetitive motion practice on this issue.

Finally, it must be remembered that the Second Circuit's remand opinion set forth a clear

path for this case, and that path did not contemplate multiple summary judgment motions on the

same issue.  In particular, the Second Circuit directed this Court to "supervise a limited period of

discovery" focused on the "sole issue" of property interest, after which the parties would engage

11

in a round of summary judgment briefing on that issue.  *Barrows*, 777 F.3d at 115-16.  That

process has been completed.  Following that process, the Second Circuit made clear that if the

Court concluded there were "material issues of fact that preclude summary judgment" on

protected property interest – which this Court found – then this Court was "directed to analyze

whether the complaint is properly dismissed **on the other two prongs of the due process analysis**

– *i.e.*, 'state action' and 'due process.'"  *Id.* at 116 (emphasis added).  The Court's June 28 Order

disallowing a second summary judgment motion on property interest was consistent with the

Second Circuit's mandate.

Accordingly, Plaintiffs respectfully submit that the trial should go forward as previously

scheduled, in February 2019.

Dated: December 3, 2018                    Respectfully submitted,

                                           */s/ David J. Berger*
                                           DAVID J. BERGER
                                           *Pro hac vice*
                                           dberger@wsgr.com
                                           STEVEN GUGGENHEIM
                                           *Pro hac vice*
                                           sguggenheim@wsgr.com
                                           LUKE A. LISS
                                           Bar No. phv07485
                                           lliss@wsgr.com
                                           DYLAN G. SAVAGE
                                           Bar No. phv07487
                                           dsavage@wsgr.com
                                           ALEXANDER K. BREHNAN
                                           Bar No. phv09624
                                           abrehnan@wsgr.com
                                           Wilson Sonsini Goodrich & Rosati
                                           650 Page Mill Road
                                           Palo Alto, California 94304
                                           (650) 493-9300
                                           Fax (650) 565-5100

LINDSEY EDWARDS
*Pro hac vice*
ledwards@wsgr.com
Wilson Sonsini Goodrich & Rosati
1700 K Street, NW, Suite 500
Washington, DC 20006
(202) 973-8959
Fax (202) 973-8899

JASON B. MOLLICK
Bar No. phv07486
jmollick@wsgr.com
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Fl.
New York, New York 10019
(212) 999-5800
Fax (212) 999-5899

ALICE BERS
Federal Bar No. ct28749
abers@medicareadvocacy.org
WEY-WEY KWOK
Bar No. phv03359
wkwok@medicareadvocacy.org
GILL DEFORD
Federal Bar No. ct19269
gdeford@medicareadvocacy.org
JUDITH A. STEIN
Federal Bar No. ct08654
jstein@medicareadvocacy.org
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
(860) 456-7790
Fax (860) 456-2614

REGAN BAILY
*Pro hac vice*
rbaily@justiceinaging.org
CAROL WONG
*Pro hac vice*
cwong@justiceinaging.org
Justice In Aging
1444 I Street, NW, Suite 1100
Washington, D.C.  20005
(202) 552-6743

13

Fax (202) 289-7224

ERIC CARLSON
*Pro hac vice*
ecarlson@justiceinaging.org
Justice in Aging
3660 Wilshire Blvd., Suite 718
Los Angeles, CA 90010
(213) 639-0930
Fax (213) 550-0501

*Attorneys for Plaintiffs, Intervenor-*
*Plaintiffs, and Class Counsel*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 3, 2018 a copy of the foregoing Plaintiffs' Response to the Court's November 26, 2018 Order was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

*/s/ David J. Berger*
DAVID J. BERGER