**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

CHRISTINA ALEXANDER, *et al.*,

       Plaintiffs,

  v.

ALEX M. AZAR II, Secretary of Health and
Human Services,

       Defendant.

Case No.:  3:11-cv-1703-MPS

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE CASE
FOR LACK OF SUBJECT MATTER JURISDICTION**

Oral Argument Requested

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................3

STANDARD OF REVIEW ....................................................................................................4

ARGUMENT .......................................................................................................................5

I.     Plaintiffs Lack Standing.................................................................................................5

     A.    Legal Standard ......................................................................................................5

     B.    Plaintiffs Lack Standing Because There Is No Causal Connection Between Their Alleged Injuries and the Lack of an HHS Administrative Review Process for Inpatient Admission Denials. ..........................................................6

          1.    Plaintiffs Lack Standing Because Their Alleged Injuries Are Not Fairly Traceable to the Challenged Conduct. ..........................................................8

          2.    Plaintiffs Lack Standing Because Their Alleged Injuries Would Not Likely Be Redressed by a Favorable Decision in this Case. ..................................9

          3.    The Original and First Intervenor Plaintiffs Do Not Allege That They Would Show a Legitimate Claim of Entitlement to Inpatient Admission at a Hearing. ..........................................................10

          4.    Deceased Medicare Beneficiaries Lack Standing Because Their Alleged Injuries Would Not Be Redressed by the Injunctive Relief Sought. ...............14

II.    Plaintiffs' Claims Are Moot. ......................................................................................16

     A.    The Original and First Intervenor Plaintiffs' Claims Are Moot. ..................................17

     B.    The Claims of Plaintiffs Who Passed Away After the Litigation Commenced Are Moot. ..........................................................18

     C.    The Claims of Plaintiffs Who Have Obtained "Full Refunds" Are Moot. .................19

CONCLUSION ..................................................................................................................19

## INTRODUCTION

This case must be dismissed for lack of subject matter jurisdiction because Plaintiffs' sole remaining cause of action—a claim that they were deprived of a protected property interest in inpatient admission without due process—presents no Article III case or controversy for the Court to adjudicate. Plaintiffs have no live challenge to the Secretary's distinction between observation and inpatient services for the purposes of Medicare Part A coverage. And there is no live claim that the Secretary's failure to grant Part A coverage for Plaintiffs' observation stays, or to provide Part A coverage for Plaintiffs' skilled nursing facility stays, was unlawful. In their surviving Fifth Amendment claim, Plaintiffs challenge the Secretary's purported "policy of not providing Medicare beneficiaries with the right to administrative review, including expedited review, of their placement on observation status," ECF No. 1, ¶ 105, and seek an injunction ordering Defendant "to establish a procedure for administrative review of a decision to place a Medicare beneficiary on observation status, including the right to expedited review," *id.* at 29. For constitutional standing, Plaintiffs therefore must show that the injuries they have allegedly suffered as a result of being designated as outpatients rather than admitted as inpatients are fairly traceable to the Secretary's alleged failure to provide a "right to administrative review . . . of their placement on observation status," *id.* ¶ 105, and that it is likely, as opposed to merely speculative, that these injuries would be redressed by the injunctive relief sought.

The Second Circuit's and this Court's narrowing of the case precludes Plaintiffs from demonstrating that they have standing to bring their claim for injunctive relief, for several reasons. First, Plaintiffs cannot demonstrate that their alleged injuries are fairly traceable to the failure of the Secretary to provide a "right to administrative review . . . of their placement on observation status," as opposed to, for instance, the particular procedures that were or were not employed by the hospitals that denied them inpatient admission. Second, Plaintiffs cannot demonstrate that establishment of an HHS "procedure for administrative review of a decision to place a Medicare beneficiary on

observation status" would likely redress their alleged injuries. This is because the Department of Health and Human Services ("HHS") cannot "formally admit[ ]" a beneficiary to the hospital, *Barrows v. Burwell*, 777 F.3d 106, 109 (2d Cir. 2015), let alone retroactively reverse "a hospital's decision whether to admit a Medicare beneficiary as an 'inpatient,'" *id.* at 114. In essence, there is a fundamental mismatch between Plaintiffs' remaining cause of action and the defendant they have chosen to sue. Third, the original and First Intervenor Plaintiffs lack standing for an additional reason: Those Plaintiffs have not alleged—let alone adduced any evidence—that, had the Secretary provided a "right to administrative review," they would have used such a process to argue that they met or passed the commercial screening tool criteria that they claim form the basis for their property interest. Because Plaintiffs would not have invoked their purported claim of entitlement in such an administrative review process, and have adduced no evidence that they would do so were they afforded the additional process they seek, there is no causal link between their claimed injuries and the challenged conduct of the Secretary. Fourth, deceased Medicare beneficiaries have no standing because they face no risk of being hospitalized again as outpatients receiving observation services, and therefore have no cognizable injury for purposes of injunctive relief. Although the Court earlier concluded that deceased Plaintiffs' estate representatives had standing, the premises of that conclusion have been negated, as set forth more fully below.

Moreover, even if Plaintiffs could somehow have demonstrated standing at the outset of the case, all of their claims are now moot, for one or more reasons. First, the undisputed facts establish that there is no current protected property interest in inpatient admission, and thus no basis to find any current or imminent future due process violation, as set forth in Defendant's supplemental memorandum in support of his second motion for summary judgment. Therefore, the original and First Intervenor Plaintiffs' claims are now moot because they rest entirely on alleged past violations of the law. Second, for the same reasons that the Plaintiffs who were deceased at the commencement

of the litigation lack standing, the claims of Plaintiffs who have passed away since commencing the litigation are now moot. Third, several of the named Plaintiffs,[1] including Ms. Goodman, have succeeded in receiving refunds for the amounts they expended for services that were initially not covered by Medicare. The Court previously concluded that the claims of such Plaintiffs were saved by the exception to the mootness doctrine for "inherently transitory" claims." *Alexander v. Cochran*, No. 11-cv-1703, 2017 WL 522944, at *5 (D. Conn. Feb. 8, 2017). However, because the undisputed facts show that there is currently no protected property interest in inpatient admission, there is no "constant class of persons suffering the deprivation complained of in the complaint," *id.*, and the "inherently transitory" exception can no longer apply.

Accordingly, the Court should dismiss the case for lack of subject matter jurisdiction.

## BACKGROUND

The relevant procedural and factual background and the applicable statutory and regulatory framework are largely set forth in Defendant's memoranda of law in support of his first Motion for Summary Judgment, *see* ECF Nos. 160-1, 178; his Second Motion for Summary Judgment, *see* ECF Nos. 319-1, 353; and his Motion for Class Decertification, *see* ECF Nos. 323-1, 348; and his earlier Supplemental Brief, *see* ECF No. 194 at 3 n.2, 6 n.5, which are incorporated here by reference. Defendant therefore highlights just a few points.

After the Court initially dismissed this case in full, Plaintiffs abandoned most of their claims, appealing only the dismissal of claims six and seven of the Complaint, which asserted violations of the Medicare Act and the Fifth Amendment's Due Process Clause. *See Barrows*, 777 F.3d at 111. In its decision, the Second Circuit affirmed the dismissal of Plaintiffs' Medicare Act claims, holding, among

---

[1] Unless otherwise indicated, as used in this memorandum of law, "the named Plaintiffs" refers to the Medicare beneficiaries who were the original Plaintiffs, First Intervenor Plaintiffs, and Second Intervenor Plaintiff, or whose interests were represented by such Plaintiffs, rather than the estate representatives who have been substituted as Plaintiffs.

other things, that "nothing in the statute entitles plaintiffs to the process changes they seek—i.e., expedited notice of their placement into observation status, and an expedited hearing to challenge this placement." *Id.* at 112. The Second Circuit explained that, under governing precedent, a Medicare beneficiary was not an "inpatient" for purposes of Part A coverage "unless he or she has been *formally admitted* to a hospital." *Id.* at 108-09 (quoting *Estate of Landers v. Leavitt*, 545 F.3d 98, 111 (2d Cir. 2008)). The Second Circuit vacated the dismissal of Plaintiffs' due process claim on the basis that Plaintiffs had "arguably" alleged facts sufficient to show a protected property interest in such formal inpatient admission. *Id.* at 115. The parties had not briefed, and the Second Circuit did not address, whether Plaintiffs had standing to bring a due process claim against the Secretary premised on a protected property interest in inpatient admission.

On remand, after the Court denied Defendant's original motion for summary judgment, *see* ECF No. 196, it certified this case as a class action under Fed. R. Civ. P. 23(b)(2). *See* ECF Nos. 242, 250. As the Court noted in its decision, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Alexander v. Price*, 275 F. Supp. 3d 313, 324 (D. Conn. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)). The Court found this requirement was met because, in their surviving claim, Plaintiffs sought "a single injunction 'ordering defendant to establish a procedure for administrative review of a decision to place a Medicare beneficiary on observation status, including the right to expedited review.'" *Id.* (citing ECF No. 1 at 28-29).

All the named Plaintiffs are now deceased. *See* ECF No. 1 ¶¶ 61, 66, 72, 83, 89; ECF No. 80; ECF No. 84; ECF No. 140; ECF No. 192; ECF No. 195; ECF No. 224; ECF No. 227; ECF No. 298.

## STANDARD OF REVIEW

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Except for the pre-answer limitation on Rule 12(b)(1)

motions, the distinction between a Rule 12(b)(1) motion and a Rule 12(h)(3) motion is largely academic, and the same standards are applicable to both types of motions." *Greystone Bank v. Tavarez*, No. 09-CV-5192, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010). In resolving a motion to dismiss the case for lack of subject matter jurisdiction, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). However, where jurisdictional facts are in dispute, the district court may refer to evidence outside the pleadings. *See id.* "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

## ARGUMENT

### I. Plaintiffs Lack Standing.

Regardless of whether the Two-Midnight Rule sets forth fixed and objective criteria for inpatient admission, or whether any named Plaintiff has or had a protected property interest in inpatient admission, the named Plaintiffs lack standing, and this case must therefore be dismissed for lack of subject matter jurisdiction.

### A. Legal Standard

Federal courts are empowered by the Constitution's Article III to hear an enumerated list of "Cases" and "Controversies." *See* U.S. Const. art. III, § 2. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, if a court finds that a plaintiff lacks standing, it must dismiss the plaintiff's claims for lack of subject matter jurisdiction. *See, e.g.*, *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (noting that "standing is a 'threshold matter' in determining whether the district court had jurisdiction to hear and decide this case").

Plaintiffs bear the burden of establishing all three elements of Article III standing. *See Lujan*, 504 U.S. at 560-61. First, Plaintiffs "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560. Although a plaintiff may bring suit to vindicate procedural rights, the alleged deprivation of a procedural right is not sufficient by itself to satisfy Article III's injury-in-fact requirement. *See id.* at 572-73 & nn.7-8; *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (explaining that the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing"). Second, Plaintiffs must show that their injury is "fairly traceable to the challenged action of the defendant," *Lujan*, 555 U.S. at 560, which in this case is the Secretary's purported failure to provide Medicare beneficiaries with a "right to administrative review, including expedited review, of their placement on observation status." ECF No. 1 ¶ 105. Third, Plaintiffs must demonstrate that it is "likely, as opposed to merely speculative," that their injury will be redressed by a favorable decision. *Id.* at 561. "[S]tanding is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted). Thus, a plaintiff who has standing for a claim for monetary damages may nonetheless lack standing to seek injunctive relief. *See id.*

## B. Plaintiffs Lack Standing Because There Is No Causal Connection Between Their Alleged Injuries and the Lack of an HHS Administrative Review Process for Inpatient Admission Denials.

Plaintiffs lack constitutional standing for their sole remaining claim, which seeks injunctive relief. Per the Second Circuit's decision, the sole remaining cause of action in this case is a claim that Plaintiffs were deprived of a protected property interest in inpatient admission without due process. *See Barrows*, 777 F.3d at 108. In this cause of action, Plaintiffs allege that, as a result of not being formally admitted as inpatients, they incurred financial costs that they would have avoided "had they formally been admitted as 'inpatients' to their hospitals." *Id.* at 107. As observed throughout the

Second Circuit opinion, the decisions not to admit Plaintiffs as inpatients were made by their respective hospitals. *See, e.g., id.* at 110 (noting that Plaintiff Sarah Mulcahy alleged that, "because *the hospital* never formally admitted her, she bore the entire cost of her subsequent [skilled nursing facility ('SNF')] care" (emphasis added)). Nonetheless, Plaintiffs have not sued their hospitals for depriving them of inpatient admission without due process. Rather, they have sued the Secretary, alleging that the Secretary's failure to provide a procedure for beneficiaries to challenge a decision to place them on observation status violates the Fifth Amendment's Due Process Clause. Plaintiffs seek an injunction ordering the Secretary "to establish a procedure for administrative review of a decision to place a Medicare beneficiary on observation status, including the right to expedited review." ECF No. 1 at 29; *see Alexander v. Price*, 275 F. Supp. 3d at 327.[2]

A fundamental problem with this surviving claim, even assuming the existence of a protected property interest, is that the alleged injuries Plaintiffs suffered are neither fairly traceable to the absence of an HHS review procedure nor likely to be redressed by the injunctive relief Plaintiffs seek.

---

[2] In response to a contention interrogatory asking what such a procedure would entail, Plaintiffs described a process that would not even directly address the "decision to place a Medicare beneficiary on observation status." ECF No. 1 at 29. Rather, Plaintiffs contended that the proposed non-expedited review would address the Medicare contractor's "initial determination that [the beneficiary's] hospital services were 'observation services' covered by or subject to coverage by Part B." ECF No. 319-4 at 9. Such an inquiry skirts the pertinent question, which is not whether the beneficiary in fact received observation services, nor whether observation services are properly subject to coverage under Medicare Part B, *see Barrows*, 777 F.3d at 108-09, 111 n.27, but rather whether the beneficiary was erroneously denied inpatient admission by his or her hospital. *See id.* at 115, 116 (noting that the alleged protected property interest is Plaintiffs' interest "in being admitted to their hospitals as inpatients"). Plaintiffs' description of the "expedited" process they seek similarly evades the relevant inquiry: Plaintiffs describe an "expedited determination of whether their services should be covered as inpatient by Part A or as observation services by Part B." ECF No. 319-4 at 11. But as the Second Circuit clearly held, Medicare permissibly requires beneficiaries to be formally admitted as inpatients in order to qualify as "inpatients" for purposes of Medicare Part A payment, *see Barrows*, 777 F.3d at 109, and the only potential protected property interest in this case is an interest in formal inpatient admission itself, *see id.* at 114-16. While it may not be the action Plaintiffs wanted to litigate, this is no longer a case about Medicare coverage determinations.

**1. Plaintiffs' Alleged Injuries Are Not Fairly Traceable to the Challenged Conduct.**

First, Plaintiffs cannot establish that their alleged injuries are fairly traceable to the challenged action. As Plaintiffs have repeatedly insisted, the challenged conduct of Defendant in this case is the Secretary's failure to provide a process whereby Plaintiffs could seek administrative review by HHS of their designations as outpatients receiving observation services. *See, e.g.*, Pls.' Opp. to Def.'s Mot. To Decertify Class, ECF No. 338, at 4. Thus, Plaintiffs must demonstrate that their injuries are "fairly traceable" to this challenged conduct, and "not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997). The challenged conduct of Defendant need not be the last step in the chain of causation. *See id.* at 168-69. However, it must form *some* part of the causal chain. *See id.*; *see, e.g.*, *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 417 (E.D.N.Y. 2009) ("Where intervening acts of third-parties exist, plaintiffs must at least allege the existence of each of the intermediate causal links in the chain from Defendant's action through to the ultimate harm.").

In this case, Plaintiffs' alleged injuries purportedly resulted from the fact that they were not formally admitted to their hospitals as inpatients, and thus did not qualify for Medicare Part A coverage for their hospital or subsequent skilled nursing facility ("SNF") stays. *See Barrows*, 777 F.3d at 107, 110. Their injuries were not caused—directly or indirectly—by the absence of an HHS procedure for administrative review of the decisions to designate them as outpatients. Indeed, even if the Court assumes that Plaintiffs did not have an adequate opportunity to demonstrate their entitlement to inpatient admission, and that they were thereby injured, there is no basis to conclude that this alleged injury was due to the absence of a procedure for "administrative review" by HHS, rather than the hospitals' own failures to provide adequate procedural protections in connection with their inpatient admission decisions. *Cf. Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 (1976) (where respondents challenged an IRS Revenue Ruling that purportedly encouraged hospitals to deny services

to indigent individuals, holding that "injury at the hands of a hospital [was] insufficient by itself to establish a case or controversy in the context of [the] suit, for no hospital [was] a defendant").

### 2. Plaintiffs' Alleged Injuries Would Not Likely Be Redressed by a Favorable Decision in this Case.

Second, and relatedly, Plaintiffs cannot show that their alleged injuries will likely be redressed by a favorable decision because the administrative review process they demand could not prevent the type of alleged deprivations at issue,[3] nor could it nullify deprivations of inpatient admission that have already occurred. The relevant hospitals are not parties to this case, and the Court therefore can afford relief only against the Secretary. *See Lujan*, 504 U.S. at 568; *Simon*, 426 U.S. at 41. But the Secretary does not and cannot make inpatient admission decisions. Indeed, consistent with its longstanding guidance, HHS's current Medicare Part A regulations specify that a beneficiary may be characterized as an "inpatient" for purposes of Part A payment only if the beneficiary is *formally admitted to the hospital* pursuant to an order entered by a physician or otherwise qualified practitioner. *See* 42 C.F.R. § 412.3(a). "The order must be furnished by a qualified and licensed practitioner who has admitting privileges at the hospital as permitted by State law, and who is knowledgeable about the patient's hospital course, medical plan of care, and current condition." *Id.* § 412.3(b). In addition, the order "must be furnished at or before the time of the inpatient admission." *Id.* § 412.3(c). Further, the Medicare statute prohibits federal government interference in the practice of medicine or hospital operations, stating:

> Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any

---

[3] Defendant assumes, for purposes of this motion only, that Plaintiffs who were still living at the outset of the case might have been able to demonstrate that they were likely to be hospitalized for observation again at some point in the future, and therefore could potentially benefit from some process that would reduce the risk of erroneous denial of inpatient admission. As set forth in Defendant's prior supplemental brief, however, and not controverted in the Court's subsequent ruling, *see* ECF No. 196, those Plaintiffs in fact did not even *allege* that they would likely again be hospitalized and wrongly designated as outpatients receiving observation services. *See* ECF No. 194 at 7.

> institution, agency, or person providing health services; or to exercise any
> supervision or control over the administration or operation of any such
> institution, agency, or person.

42 U.S.C. § 1395. Thus, under governing law and regulations, HHS itself cannot admit a beneficiary to a hospital as an inpatient, nor retroactively transform an outpatient stay into an inpatient stay for purposes of Medicare Part A payment. Accordingly, the process sought by Plaintiffs would not and could not reverse an "erroneous" decision by a hospital not to admit a beneficiary as an inpatient, let alone redress any financial injuries Plaintiffs allegedly suffered as a result of such decisions.

Indeed, even if a Plaintiff sought only a process that would allow her to seek admission as an inpatient going forward when already hospitalized as an outpatient receiving observation services, she could not satisfy the redressability requirement for Article III standing because only a doctor with admitting privileges at her hospital could order such an admission. *See* 42 C.F.R. § 412.3(b); *cf. Lujan*, 504 U.S. at 568 ("Since the agencies funding the projects were not parties to the case, the District Court could accord relief only against the Secretary: He could be ordered to revise his regulation to require consultation for foreign projects. But this would not remedy respondents' alleged injury unless the funding agencies were bound by the Secretary's regulation, which is very much an open question."); *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) ("The traceability and redressability prongs become problematic when third persons not party to the litigation must act in order for an injury to arise or be cured.").

### 3. The Original and First Intervenor Plaintiffs Do Not Allege That They Would Show a Legitimate Claim of Entitlement to Inpatient Admission at a Hearing.

Third, the original and First Intervenor Plaintiffs also lack standing for an additional reason: Even if an HHS administrative review process had the potential to redress a deprivation of formal inpatient admission, Plaintiffs have not alleged—let alone adduced any evidence—that they would have utilized that process to argue that they were eligible for inpatient admission based on the allegedly applicable commercial screening tool criteria.

10

The purpose of a hearing under the Due Process Clause is to give the claimant an opportunity to demonstrate a legitimate claim of entitlement to a protected liberty or property interest. *See, e.g.,* *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005) (holding that "the plaintiffs possess a sufficient property interest in the receipt of HEAP benefits to warrant due process protection *in their demonstration of eligibility*" (emphasis added)); *id.* at 116 (explaining that "the aim of proper procedures is precisely to allow the state to decide *properly* whether the applicant in fact has a legitimate claim of entitlement"). In *Codd v. Velger*, 429 U.S. 624 (1977) (per curiam), the Supreme Court explained this principle as it applied to a claim that a discharged police officer was entitled to a due process hearing relating to the inclusion in his personnel file of arguably stigmatizing information about a suicide attempt. The Court noted that, in that context, "[a]ssuming all of the other elements necessary to make out a claim of stigmatization . . ., the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.'" *Codd*, 429 U.S. at 627. If the former employee "[did] not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him," and it thus would serve no "useful purpose." *Id.* at 627-28. Because of the "nature of the interest sought to be protected," the employee's due process claim was doomed by his failure to "affirmatively assert[ ] that the report of the apparent suicide attempt was substantially false." *Id.* at 627; *see also Michael H. v. Gerald D.*, 491 U.S. 110, 127 n.5 (1989) ("We cannot grasp the concept of a 'right to a hearing' on the part of a person who claims no substantive entitlement that the hearing will assertedly vindicate."). Applying the principle set forth in *Cobb* to a due process claim based on an issuance of a parking ticket, the Tenth Circuit concluded that the plaintiff lacked standing because "[s]he [did] not assert any legal basis for challenging the ticket." *Rector v. City & Cty. of Denver*, 348 F.3d 935, 944 (10th Cir. 2003). Because there "was nothing for a hearing to decide," any "deficiencies in notice thus caused no injury." *Id.* at 945.

Here, the original and First Intervenor Plaintiffs similarly cannot demonstrate standing because, even if HHS had the power to admit beneficiaries as inpatients, the Plaintiffs' purported injuries are not fairly traceable to the absence of an HHS administrative review process to challenge the decisions to designate them as outpatients receiving observation services. The relevant interest is a purported protected property interest in formal inpatient admission, *see Barrows*, 777 F.3d at 108, which, for the Plaintiffs whose relevant hospital stays concluded prior to October 1, 2013,[4] is allegedly based on fixed and objective criteria for inpatient admission in the form of commercial screening tools. *See* 11/16/18 Hr'g Tr. 66:11-18, 67:2-14, 69:12-20; ECF No. 360 at 6 n.2. Nowhere in the original or First Intervenor Complaint, however, do Plaintiffs allege that they in fact met the purportedly applicable commercial screening tool criteria for inpatient admission, or that, were they afforded the hearings they seek, they would have challenged their hospitals' conclusions that they did not meet the criteria. *See generally* ECF Nos. 1, 53.

Indeed, even after discovery, the original and First Intervenor Plaintiffs do not contend that, had HHS administrative review been available, they would have argued that they met the purportedly applicable commercial screening tool criteria for inpatient admission. For example, in opposition to Defendant's first motion for summary judgment, Ms. Savage argued not that a hearing would give her the chance to show she met commercial screening tool criteria, but rather that she would have the opportunity to demonstrate "that her physician intended for her to be inpatient and that it was a reasonable expectation based on the medical record." ECF No. 165 at 25. Plaintiffs have admitted that Ms. Savage "did not pass InterQual's criteria" for inpatient admission. ECF No. 164 at 33. They have also asserted that Ms. Savage "should have been given an opportunity to ensure that InterQual

---

[4] All of the relevant hospital stays of the original and First Intervenor Plaintiffs concluded prior to 2013. *See* ECF No. 1 ¶¶ 11-17; ECF No. 53 ¶¶ 12-18.

had been applied correctly," *id.*, but have not argued that Ms. Savage would have maintained that the InterQual criteria were applied *incorrectly*, let alone identified any ground for such a claim.

Plaintiffs' argument for why Mr. Dziadzia would benefit from an administrative review process likewise made no reference to screening tool criteria. *See* ECF No. 165 at 25. Instead, they argued that, "if his procedure had been on CMS's inpatient only list, and the hospital mistakenly categorized him as observation status, he should have had the opportunity to challenge that classification." *Id.* Mr. Dziadzia did not argue that he in fact underwent a procedure on that list. Further, the "inpatient only list" refers to one of the exceptions to the two-midnight benchmark in 42 C.F.R. § 412.3(d), a regulation that was not yet promulgated at the time of Mr. Dziadzia's hospitalization. *See* ECF No. 53 ¶ 12; 78 Fed. Reg. 50496, 50965 (Aug. 19, 2013). Indeed, the First Intervenor Complaint makes no mention of the "inpatient only list," nor suggests that Mr. Dziadzia was entitled to inpatient admission based on undergoing an "inpatient only" procedure. *See generally* ECF No. 53.[5] In any case, Plaintiffs have apparently abandoned any assertion that the named Plaintiffs have or had a protected property interest in inpatient admission based on the "inpatient only list." *See* 11/26/18 Hr'g Tr. at 66:1-18.

Similarly, in opposition to Defendant's pending summary judgment motion, Ms. Leyanna only suggests that, during a review by the Secretary, "[she] could have been provided"—through some unexplained mechanism—"with information about the InterQual criteria the hospital found she did not meet, so that any possible errors could be corrected." ECF No. 332 at 24-25. But, like Ms. Savage and Mr. Dziadzia, Ms. Leyanna does not assert that the hospital actually made errors in its application of particular InterQual criteria, let alone that she would have claimed an entitlement to inpatient admission based on satisfaction of those criteria.[6] *See id.*

---

[5] The original complaint and Second Intervenor Complaint likewise do not mention the "inpatient only list." *See generally* ECF Nos. 1, 123.

[6] Plaintiffs have not described what sort of showings any original or First Intervenor Plaintiffs other than Ms. Savage, Ms. Leyanna, and Mr. Dziadzia purportedly would make, or would have made, at

Because the original and First Intervenor Plaintiffs have not alleged, let alone adduced evidence, that they would or could have used a procedure "for administrative review" to show that they met or passed the purportedly applicable commercial screening tool criteria for inpatient admission, any injury they incurred is not fairly traceable to the absence of an administrative review process sponsored by the Secretary, let alone likely to be redressed by the implementation of such a process. *Cf. Barrows*, 777 F.3d at 115 (taking "no position regarding what form of notice or administrative review, expedited or otherwise, would be required if Medicare beneficiaries *who satisfy* the 'fixed' criteria are denied admission to a hospital as an 'inpatient'" (emphasis added)).

### 4. Deceased Medicare Beneficiaries Lack Standing Because Their Alleged Injuries Would Not Be Redressed by the Injunctive Relief Sought.

Fourth, deceased Medicare beneficiaries lack standing because they do not face the risk of a future hospitalization and thus lack any actual or imminent injury that likely would be redressed by the prospective injunctive relief sought—i.e., a process by which a Medicare beneficiary could seek administrative review of a decision by a physician or hospital to designate him or her as an outpatient receiving observation services. In its previous ruling, the Court concluded that Plaintiffs who passed away before the litigation began had standing, and that the claims of Plaintiffs who passed away after the litigation began were not moot, because "the estate representatives continue to lack administrative appeal rights." *Alexander v. Cochran*, 2017 WL 522944, at *5. However, as noted above, and as alluded to by the Court during the recent hearing in this case, *see* 11/26/18 Hr'g Tr. 54:21-55:5, deprivation of a "procedural right *in vacuo*" is not sufficient to create an Article III case or controversy; rather, a

---

the hearings they seek. Plaintiffs' failure to allege or argue that they would use the process they seek to show that they meet the criteria that purportedly form the basis for their property interest is unsurprising, given that Plaintiffs have yet to identify what the relevant commercial screening tool criteria for inpatient admission purportedly *are*. *See* ECF No. 319-1 at 26; ECF No. 353 at 3-4.

plaintiff also must show that a concrete interest is affected by the deprivation. *Summers*, 555 U.S. at 496. The injunctive relief sought by the deceased Plaintiffs would not redress any such injury.

In its earlier ruling, which preceded the Court's class certification order, the Court also suggested that the lack of an appeals process "is preventing [the estate representatives] from requesting and receiving monetary refunds for care that was not covered." *Alexander v. Cochran*, 2017 WL 522944, at *4. However, there is no live claim that the Secretary has unlawfully deprived Plaintiffs of Part A coverage, or that seeks Part A coverage or reimbursement for Plaintiffs' hospital or SNF stays. Rather, the Court found that a class could be certified under Rule 23(b)(2) because Plaintiffs sought a single injunction "ordering defendant . . . to establish a procedure for *administrative review of a decision to place a Medicare beneficiary on observation status*, including the right to expedited review." *Alexander v. Price*, 275 F. Supp. 3d at 327 (ellipses in original) (emphasis added) (quoting ECF No. 1 at 28-29). The Court did not certify an issues class pursuant to Rule 23(c)(4), and did not certify any class with respect to Plaintiffs' other original claims for relief, such as their claim seeking an "injunction" ordering Defendant "to review all coverage decisions for the named plaintiffs and class members of post-hospitalization SNF care, to determine whether placement on observation status precluded them from obtaining Part A coverage of SNF care to which they would have otherwise been entitled, and to reimburse them for any amounts that they paid for post-hospitalization care." ECF No. 1 at 30.[7] Thus, it is clear that no such claims for reimbursement remain in the case.[8]

---

[7] As that original claim for relief implicitly acknowledges, formal admission as an inpatient would not have guaranteed that Plaintiffs' hospital stays or subsequent SNF stays would be covered under Medicare Part A. Rather, the services would have been covered under Part A only if (1) the provider timely billed the services to Medicare under Part A, 42 C.F.R. § 424.30 *et seq.*; *see also* 78 Fed. Reg. at 50928-30; and (2) the services were determined to be medically reasonable and necessary, 42 U.S.C. § 1395y(a)(1)(A); *see also* 42 C.F.R. § 411.15(k), and to meet all other regulatory requirements for Part A coverage, *see* 42 C.F.R. § 412.3; *id.* § 409.30 *et seq.*

[8] Nor could such claims remain in the case: a due process claim seeking compensation for amounts Plaintiffs allegedly paid as a result of being deprived of formal inpatient admission is a claim for individualized money damages, which is a type of claim for which the United States has not waived

Because the named Plaintiffs face no prospect of ever again being deprived of inpatient admission, they cannot benefit from prospective relief. Nor could their estate representatives benefit from such relief. Ordering the Secretary to create a process whereby Medicare beneficiaries could seek review of their observation designations simply would not affect the rights of individuals whose observation stays have long since ended, and who have no prospect of being hospitalized for observation again. *Cf. Blum v. Yaretsky*, 457 U.S. 991, 1001 (holding that plaintiff Medicaid patients lacked standing to challenge the procedures attending transfers to higher levels of care because, *inter alia*, the threat of them facing such transfers was not "of sufficient immediacy and reality" (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)).

## II.     Plaintiffs' Claims Are Moot.

Even if Plaintiffs could have demonstrated standing at the outset of the case, their claims are now moot. "In order to satisfy the case-or-controversy requirement [of Article III], a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Williams*, 475 F.3d 468, 478-79 (2d Cir. 2007) (citation omitted). "A case that becomes moot at any point during the proceedings is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (citation omitted). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). A claim should be dismissed as moot when, as a result of changed circumstances, "the

---

sovereign immunity, *see, e.g.*, *Dep't of Army v. FLRA*, 56 F.3d 273, 276 (D.C. Cir. 1995) (claim seeking reimbursement is a claim for "money damages"); *McKoy v. Spencer*, 271 F. Supp. 3d 25, 32 (D.D.C. 2017) ("The APA's waiver of sovereign immunity only applies to Plaintiff's First and Fifth Amendment claims to the extent Plaintiff seeks relief 'other than money damages.'"), as well as a claim that would be outside the scope of Fed. R. Civ. P. 23(b)(2), *see Dukes*, 564 U.S. at 360-61 ("Rule 23(b)(2) . . . . does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.").

parties have no 'legally cognizable interest' or practical 'personal stake' in the dispute, and the court is therefore incapable of granting a judgment that will affect the legal rights as between the parties." *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 94 (2d Cir. 2007).

In this case, all of the named Plaintiffs' claims are now moot, for one or more reasons.

### A.  The Original and First Intervenor Plaintiffs' Claims Are Moot.

The original and First Intervenor Plaintiffs allege only past injuries, and, in the absence of a current protected property interest, there is no evidence of any ongoing constitutional violation or likelihood of any future violations of their rights. "The sole function of an action for injunction is to forestall future violations." *United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952); *accord SEC v. Culpepper*, 270 F.2d 241, 250 (2d Cir. 1959). Thus, where an alleged violation of the law has ended, there will be a continued case or controversy as to a claim for injunctive relief only if "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); *accord Borg-Warner Corp. v. FTC*, 746 F.2d 108, 110 (2d Cir. 1984). As the Supreme Court has explained, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy" with respect to a claim for injunctive relief unless the past harm is accompanied by "'continuing, present adverse effects'" that would be redressed by the injunctive relief sought. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Here, Plaintiffs' due process claim is premised on the existence of a protected property interest in inpatient admission. As set forth in Defendant's supplemental memorandum in support of its second motion for summary judgment, the undisputed facts establish that there is no protected property interest in inpatient admission arising from the Two-Midnight Rule. Because Plaintiffs contend that the current applicable "standard" for formal inpatient admission is the Two-Midnight Rule, *see* ECF No. 360 at 6 n.2, and do not contend (let alone identify any evidence) that Medicare

beneficiaries currently are entitled to be admitted as inpatients if they meet or pass a commercial screening tool's criteria, *see, e.g.*, 11/26/18 Hr'g Tr. 66:11-18, 67:11-4, there is no danger that the alleged absence of particular procedures for review of inpatient admission decisions will violate their due process rights.

In other words, because the undisputed facts establish that, even if there were once a protected property interest in inpatient admission based on commercial screening tool criteria, the original and First Intervenor Plaintiffs (and any class members they might represent) no longer have such an interest, and because the hospitalizations during which they were denied "inpatient status" concluded long ago, their claims are disconnected from any current or continuing violation of the law. *See, e.g.*, *Burns v. PA Dep't of Corr.*, 544 F.3d 279, 284 (3d Cir. 2008) (explaining that "a procedural due process violation is complete at the moment an individual is deprived of a liberty or property interest without being afforded the requisite process"). They therefore have no "personal stake" or legally cognizable interest in whether the Secretary currently offers, or in the future will offer, an administrative process to challenge denials of inpatient admission. *ABN Amro Verzekeringen BV*, 485 F.3d at 94. Accordingly, their claims for injunctive relief (which are the only remaining claims) are moot. *Cf. Granite State Outdoor Advert., Inc. v. Town of Orange, Connecticut*, 303 F.3d 450, 451-52 (2d Cir. 2002) (where Town had "completely revised its regulations through proper procedures" and there was "no reason to think that . . . the Town ha[d] any intention of returning to the prior regulatory regime," finding no basis to conclude that current regulations were unconstitutional, and that claim for injunctive relief was moot).

### B. The Claims of Plaintiffs Who Passed Away After the Litigation Commenced Are Moot.

All of the named Plaintiffs are now deceased. *See* ECF No. 1 ¶¶ 61, 66, 72, 83, 89; ECF No. 80; ECF No. 84; ECF No. 140; ECF No. 192; ECF No. 195; ECF No. 224; ECF No. 227; ECF No. 298. As explained above, *see supra* Part I.B.4, neither deceased Plaintiffs nor their estate representatives could possibly benefit from the injunctive relief sought in this case. Accordingly, the claims of

Plaintiffs who have passed away since the commencement of the litigation are moot. *See ABN Amro Verzekeringen BV*, 485 F.3d at 94.

### C.  The Claims of Plaintiffs Who Have Obtained "Full Refunds" Are Moot.

The Court previously held that the claims of named Plaintiffs who had obtained "full refunds" were not moot based on the "inherently transitory" exception to the mootness doctrine. *Alexander v. Cochran*, 2017 WL 522944, at *5. However, that exception only applies to a putative class action if "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016). If there is no current protected property interest in inpatient admission, Plaintiffs cannot show that there is a constant class of persons suffering the deprivation alleged in the complaint. Because Plaintiffs do not contend, and have adduced no evidence, that the current criterion for inpatient admission is "meeting or passing a commercial screening tool's criteria," and because the Two-Midnight Rule does not give rise to a protected property interest in inpatient admission, *see* Suppl. Mem. of Law in Supp. of Def.'s Second Mot. For Summary J. at 8-11, there clearly is not a "constant class of persons suffering the deprivation complained of in the complaint," *Salazar*, 822 F.3d at 73, and the "inherently transitory" exception cannot apply. Accordingly, the claims of named Plaintiffs Barrows, Renshaw, Morse, and Goodman are moot because they already received favorable decisions through the Medicare administrative review process, which redressed the only concrete injury they might plausibly allege. *See* ECF Nos. 68-1, 22-1, 83-2, 65-3; ECF No. 166, at 4 n.1; *see generally* ECF No. 194 at 6 & n.5.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the case for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

Dated:  January 30, 2019                    Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            JOHN DURHAM
                                            United States Attorney

                                            MICHELLE R. BENNETT
                                            Assistant Branch Director

                                            /s/ Elizabeth Tulis
                                            ELIZABETH TULIS
                                            KELLEY HAUSER
                                            JASON LEE
                                            Trial Attorneys
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, NW
                                            Washington, D.C. 20005
                                            (202) 514-9237
                                            elizabeth.tulis@usdoj.gov

                                            *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 30, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing to the parties.

/s/ *Elizabeth Tulis*
ELIZABETH TULIS