UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CHRISTINA ALEXANDER, *et al*,

    Plaintiffs,

v.

ALEX M. AZAR II, Secretary of Health and Human Services,

    Defendant.

Case No.: 3:11-cv-1703-MPS

**PLAINTIFFS' LOCAL RULE 56(a)2 STATEMENT
IN RESPONSE TO DEFENDANT'S SUPPLEMENTAL 56(a)1 STATEMENT IN
SUPPORT OF HIS SECOND MOTION FOR SUMMARY JUDGMENT**

**REDACTED**

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| "2018 56(a)2" | Plaintiffs' Local Rule 56(a)2 Statement in Opposition to Defendant's Second Motion for Summary Judgment, filed Sept. 13, 2018 (ECF No. 331-1) |
| "Def. 56(a)1" | Supplemental Local Rule 56(a)(1) Statement of Undisputed Material Facts, filed Jan. 30, 2019 (ECF No. 369-1) |
| "Pls. Mem." | Plaintiffs' Memorandum in Opposition to Defendant's Supplemental Brief in Support of His Second Motion for Summary Judgment (filed with this Statement) |

**SOF 1.**  Chapter 1, § 10 of the current Medicare Benefit Policy Manual sets forth the Centers for Medicare & Medicaid Services' ("CMS's") interpretive guidance regarding Medicare Part A payment requirements for inpatient hospital stays and regarding related inpatient admission decisions. Medicare Benefit Policy Manual, Ch. 1, § 10 (Ex. 1).

**Response:**  Admitted.

**SOF 2.**  Plaintiff Dorothy Goodman was hospitalized from January 31 to February 3, 2014. ECF Nos. 166-49, 164-54, 164-55.

**Response:**  Admitted.

**SOF 3.**  For the period from October 1, 2013, to present, Plaintiffs have adduced no evidence that the Department of Health and Human Services ("HHS") has directed hospitals to admit as inpatients all Medicare beneficiaries who meet or pass a commercial screening tool's criteria for inpatient admission.

**Response:** Objection. The statement is not material to the decision of the motion. *See* Pls. Mem. at 3-4 for why it is not necessary to show that from October 1, 2013 onward, HHS "has directed hospitals to admit as inpatients all Medicare beneficiaries who meet or pass a commercial screening tool's criteria for inpatient admission." To the extent that the statement is material, it is denied as misleading and incomplete because Plaintiffs have adduced evidence that HHS, acting through CMS, has authorized screening tools to be used for the medical necessity component of the Two-Midnight Rule, and that ▮▮▮▮▮▮▮ and hospitals ▮▮. *See* ¶¶ 19-22, *infra*.

**SOF 4.**  For the period from October 1, 2013, to present, Plaintiffs have adduced no evidence that HHS has suggested that hospitals should admit as inpatients all Medicare beneficiaries who meet or pass a commercial screening tool's criteria for inpatient admission.

**Response:** Objection. The statement is not material to the decision of the motion. *See* Pls. Mem. at 3-4 for why it is not necessary to show that from October 1, 2013 onward, HHS "has suggested that hospitals should admit as inpatients all Medicare beneficiaries who meet or pass a commercial screening tool's criteria for inpatient admission." To the extent that the statement is material, Plaintiffs repeat and incorporate by reference Response No. 3.

**SOF 5.** Plaintiffs have adduced no evidence that any hospitals currently admit Medicare beneficiaries as inpatients through rote application of commercial screening tools.

**Response:** Objection. The statement is not material to the decision of the motion. *See* Pls. Mem. at 3-4 for why it is not necessary to show that hospitals currently admit beneficiaries through "rote application of commercial screening tools." To the extent that the statement is material, it is denied as misleading and incomplete because Plaintiffs have adduced evidence that hospitals currently apply commercial screening tools to determine the medical necessity component of hospitalizations under the Two-Midnight Rule. *See* ¶ 22, *infra*. Further, Plaintiffs have adduced evidence that hospitals admit Medicare beneficiaries as inpatients if, *inter alia*, the medical necessity component is satisfied. *See id.*

**SOF 6.** Plaintiffs to date have adduced no evidence indicating what any commercial screening tool's criteria for inpatient admission are (or were).

**Response:** The statement is equivalent to ¶ 33 in the Secretary's 2018 56(a)1 statement and plaintiffs hereby incorporate by reference their objection and denial to that statement in response. *See* 2018 56(a)2, Response to ¶ 33.

**SOF 7.** As explained by the Rule 30(b)(6) deponent for Mercy Hospital, both InterQual and MCG, which is the successor to Milliman, "have subsets that are based on clinical conditions" or "the affected body system." Dep. of Wanda Wilson (Ex. 2) 91:8-11, 154:18-23. In utilizing the

commercial screening tool, hospital personnel "select the most appropriate subset" based on the patient's "primary condition" or "the working diagnosis," which are "typically . . . evident in the attending physician's history and physical." *Id.* 91:1-15. At Mercy Hospital, this process entails the utilization management nurse's taking information from the medical record based on the doctor's assessment of a particular patient. *Id.* 155:11-20.

**Response:** Admit.

**SOF 8.** Mercy Hospital's current procedures take into account situations that "MCG does not fully cover." *Id.* 170:15-171:2. "MCG does not fully cover" refers to the fact that the tool does not always "cover procedures in the way that [the hospital] would find ideal." *Id.* 170:15-23. In other words, the hospital's review process takes into account cases in which "the way procedures are even addressed within [the MCG] guideline is different than how [the hospital] would use it in [its] processes." *Id.* 170:23-171:2.

**Response:** Admitted that the deponent made the quoted statements. Denied to the extent that the statement is incomplete and vague, including because it is unclear what "Mercy Hospital's current procedures" refers to, how those procedures "take into account" situations or cases MCG does not cover, as well as what it means for MCG to "cover" or "address" a "procedure." The statement is also incomplete and vague in that ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*See* Ex. 46 to 2018 56(a)2 at 8-10; Mercy Hospital Dep. ("Mercy Dep.") at 80:13-81:4 (Pls. Ex. 1). *See* ¶ 22, *infra*, for additional evidence on the use of screening tools in Mercy Hospital's utilization review processes.

**SOF 9.** The Recovery Audit Contractor ("RAC") audits that the Court addressed in its earlier summary judgment ruling were suspended in 2013. Decl. of Daniel Duvall – RACs, ECF No. 160-11, ¶ 6. Specifically, after the publication of the Medicare Hospital Inpatient Prospective Payment System (IPPS) Final Rule for FY 2014, CMS prohibited the RACs from performing inpatient hospital patient status reviews on claims for dates of admission from October 1, 2013, through September 30, 2015. Second Decl. of Jeneen Iwugo, dated January 29, 2019 (Ex. 3) ¶ 8. This prohibition was later extended to dates of admission through December 31, 2015. *Id.*

**Response:** Admit.

**SOF 10.** Currently, CMS monitors the appropriateness of Part A claims for short inpatient stays through what are known informally as "short stay reviews." *Id.* ¶¶ 3-5. In these reviews, contractors called Beneficiary & Family Centered Care Quality Improvement Organizations ("QIOs") review a sample of claims for short inpatient stays to ensure that providers are appropriately billing the claims under Medicare Part A. *Id.* ¶ 4. QIOs' performance of short stay reviews is governed by CMS guidance entitled "Reviewing Short Stay Hospital Claims for Patient Status: Admissions On or After January 1, 2016." *Id.* ¶ 6.

**Response:** Admitted that currently CMS conducts "short stay" reviews of Part A hospital claims. The first two sentences are denied as misleading and incomplete as CMS does not simply "monitor the appropriateness of Part A claims" in short stay reviews, but specifies those instances in which payment under Part A should be deemed appropriate and will be paid, and denies payment for inpatient claims found to be non-compliant with the Two-Midnight Rule. *See generally* Ex. 1 to 2018 56(a)2 (CMS's guidance for short-stay reviews); *see also* Ex. 31 to 2018 56(a)2 at 002630-002632 (example of QIO letter denying inpatient claims). The third sentence is admitted.

**SOF 11.** Since January 2016, RACs have been authorized to conduct patient status reviews only for those providers that have been referred by a QIO for exhibiting persistent noncompliance with Medicare payment policies. *Id.* ¶ 8. To date, there have been no such referrals. *Id.* ¶ 9.

**Response:** The first sentence is admitted. The second sentence is neither admitted nor denied for lack of ability to verify.

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS**

12. Medicare beneficiaries who have met the requirements for entitlement to Hospital Insurance (Part A) are entitled to have payment made on their behalf for coverage of inpatient hospital services. 42 U.S.C. § 426(a)-(b) (every individual meeting requirements for Social Security retirement or disability benefits "shall be entitled to hospital insurance benefits under Part A"); § 1395d(a) (benefits provided under Part A "shall consist of entitlement to have payment made . . . for . . . inpatient hospital services . . . ."); Medicare Benefit Policy Manual Ch. 1 § 10 ("Patients covered under hospital insurance are entitled to have payment made on their behalf for inpatient hospital services.") (Ex. 1 to Def. 56(a)1).

13. As hospitals' use of observation status increased with the implementation of the Recovery Audit Contractor (RAC) program, CMS expressed concern about negative ramifications for beneficiaries, including for observation stays lasting longer than 48 hours. 2013 HHS Office of Inspector General (OIG) Report at 1-3 (Ex. 78 to 2018 56(a)2); 72 Fed. Reg. 66579, 66814 (Nov. 27, 2007); 77 Fed. Reg. 45061, 45156 (Jul. 30, 2012); 78 Fed. Reg. 27486, 27644 (May 10, 2013). CMS invited public comments over whether it would be helpful to "establish more specific criteria for patient status," recognizing that at the time it did not "specify a limit on the time a beneficiary may be an outpatient receiving observation services . . . ." 77 Fed. Reg. at 45157. *See also* HHS Dep. (M. Hartstein) at 19:16-23 (Pls. Ex. 2); Mercy Dep. at 34:10-22 (Pls. Ex. 1) (█████████████████████████████████████████████████).

14. The Two-Midnight Rule contains a "benchmark," defined as a reasonable expectation that a patient requires hospital care for at least two midnights. 78 Fed. Reg. 50496, 50947 (Aug. 19, 2013). CMS has stated that physicians "should admit the patient as an inpatient" when the

length of stay for medically necessary hospital care is expected to surpass two midnights." *Id.*; *see also* HHS Dep. (D. Duvall) at 106:22-107:3, 109:24-110:1 (Pls. Ex. 3). The Rule also contains a "presumption," under which inpatient admissions spanning at least two midnights are presumed appropriate and will generally not be subject to medical review by CMS absent evidence of systematic gaming, abuse, or delays of care to qualify for the presumption. 78 Fed. Reg. at 27645; 78 Fed. Reg. at 50950.

15. With regard to the Two-Midnight Rule, CMS explained that the "complex medical decision" aspect of an admission decision is whether to keep the patient at the hospital for treatment or discharge home, and "[i]f the resultant length of stay for medically necessary hospitalization is expected to surpass 2 midnights, the physician should admit the patient as an inpatient." 78 Fed. Reg. at 50947. In other words, doctors make a "medical decision . . . to keep the beneficiary at the hospital in order to receive services . . . or discharge the beneficiary home," but it is the two-midnight benchmark that governs "when beneficiaries determined to need such continuing treatment are generally appropriate for inpatient admission or outpatient care in the hospital." *Id.* at 50945.

16. Plaintiffs' expert witness Ann Sheehy, M.D., stated that after assessing a patient's clinical status, she determines whether the patient needs to stay for two or more midnights of care to determine patient status for Medicare rules. Sheehy Dep. at 45:7-46:11 (Pls. Ex. 4). She explained that there would be no need to distinguish between observation and inpatient status without Medicare rules. *Id*. at 50:5-52:8, 160:22-161:12.

17. Under the Two-Midnight Rule, the two midnights of hospital care must be medically necessary. *See* Tr. of a KePRO 1:1 Provider Education Session at 16:12-14, 17-19 (Ex. 22 to 2018 56(a)2) ("███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████"); Notes of a Livanta 1:1 Provider Education Session at 003784 (Ex. 37 to 2018 56(a)2) ("█████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████"); Mercy Dep. at 19:8-15 (Pls. Ex. 1) ("████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████").

18. Under 42 C.F.R. § 412.46(b), "[n]o presumptive weight shall be assigned to the physician's order . . . in determining the medical necessity of inpatient hospital services . . . ."

19. Since the Two-Midnight Rule went into effect, CMS has authorized its contractors to use commercial screening tools in determining the medical necessity component of inpatient hospital claims at the initial review level. The Rule's length-of-stay expectation (or one of its exceptions) must also be met for the hospitalization to be considered appropriately inpatient. *See* CMS's "BFCC-NCC Questions and Answers Form" for short-stay reviews at HHS0018509-10 (Ex. 5 to 2018 56(a)2) ("The BFCC-QIO may use evidence-based screening criteria for the medical necessity review of the selected claim. One example would be the use of InterQual©, a nationally recognized commercial screening tool, to determine medical necessity. Should a BFCC-QIO's initial reviewer be unable to determine medical necessity through the use of this tool, the claim and all associated medical records will send to a physician reviewer for his/her clinical judgment about the need for the inpatient level of care under review. The Two Midnight

Redetermination Short Stay Review criteria . . . will also be employed to determine whether or not the hospital/facility applied the criteria appropriately).

20. KePRO, one of the two current QIO contractors, ███████████████ ███████████████████████████████████████████████████. KePRO ███████ ██████████████████████████: *see e.g.*, KePRO Employee Reference Manual for nurse reviewers at KEPRO0161 ("█████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ ████████████████████████████") (Ex. 28 to 2018 56(a)2); KEPRO Employee Reference Manual at KEPRO 0177-78 (██████████████████████████████████ ████████████") (Ex. 28 to 2018 56(a)2); Appendix 005 to KePRO Employee Reference Manual at KEPRO 0194 (Ex. 29 to 2018 56(a)2) (████████████████████████ █████████████████████████████████████████████).

21. Documents from Livanta, the other QIO contractor, ████████████████ █████████████████████████████████████████████████. *See* Notes from Livanta 1:1 Provider Education Session at 003784 (Ex. 37 to 2018 56(a)2) (██████ █████████████████████████████████████████████████); Livanta notes of 3/8/16 1:1 Provider Education Session at 004872 (Pls. Ex. 5) ████████████████ █████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████).

22. Hospitals also continue to incorporate screening tools into their utilization management procedures in applying the Two-Midnight Rule. *See* Mercy Dep. at 68:10-72:16 (Ex. 45 to 2018 56(a)2); Mercy Dep. at 73:24-79:18 (Pls. Ex. 1) (█████████████████████████

-9-

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); Holy Name Dep. at 23:7-16 (Ex. 42 to 2018 56(a)2); Backus Hospital Dep. ("Backus Dep.") at 28:24-29:9 (Pls. Ex. 6).

23.  CMS introduced the Two-Midnight Rule in part to establish clarity and certainty surrounding Medicare's treatment of inpatient hospital claims. CMS has stated the Two-Midnight Rule "maintain[s] the certainty that patient stays of 2 midnights or longer after admission are generally appropriate for payment under Medicare Part A and will generally only be selected for review in circumstances of fraud or gaming." 80 Fed. Reg. 70298, 70542-43 (Nov. 13, 2015). CMS also stated that the "presumption" aspect of the Rule "maintains the certainty that patient stays of 2 midnights or longer after admission are presumptively appropriate as inpatient cases." *Id.* at 70542. *See also* HHS Dep. (M. Hartstein) at 33:3-7 (Pls. Ex. 2) (Two-Midnight Rule formulated to provide more definitive and clear guidance about distinction between inpatient and outpatient services, and when to admit a patient as an inpatient); KePRO Employee Reference Manual at KEPRO 0166 (Ex. 28 to 2018 56(a)2) ("▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓") (emphasis added).

24.  CMS has mandated its QIOs conducting reviews of inpatient hospital claims to approve cases that meet the Two-Midnight Rule's general rule (expectation of at least two midnights of hospital care) or one of its exceptions. In its guidance to contractors conducting "short-stay" reviews of inpatient claims, CMS states that QIOs "*will* approve" cases that meet either the Two-Midnight Rule's general rule or one of its exceptions. *See* CMS, Reviewing Short Stay Hospital Claims for Patient Status, Admissions On or After January 1, 2016 at ALEX0000080-81 (Ex. 1 to 2018 56(a)2): "QIOs *will approve* these cases [expected stay of two or more midnights] so long as other requirements are met" (emphasis added); "The QIOs *will*

*approve* these cases [procedures on the Inpatient-Only List] so long as other requirements are met"; "These cases [expected stay of less than two midnights on 'case-by-case' basis] *will be approved* by the QIOs when the other requirements are met". A previous version of the same memorandum, covering admissions from 10/1/2013 to 12/31/2014, contained substantially similar language: "CMS *will direct Medicare review contractors to approve* these cases [expected stay of two or more midnights] so long as other requirements are met"; "CMS *will direct Medicare review contractors to approve* these cases [procedures on the Inpatient-Only List] so long as other requirements are met" (emphasis added). *See* Qualis Health Dep. (J. Sparks), Ex. 1 at QUALIS000048 (Pls. Ex. 7).

25.  CMS also devised a 6-step algorithm that further explains how QIOs should review inpatient hospital claims under the Two-Midnight Rule for short-stay reviews, and which does not allow for claims meeting the Rule's criteria to be denied. *See* Ex. 2 to 2018 56(a)2 at HHS0012752). *See also* Ex. 8 to 2018 56(a)2 at HHS0018382 (Medical Officer Collaboration Meeting Minutes, discussion of 6-step algorithm among CMS and QIO contractors, with CMS representative advising QIOs to "stick with the algorithm and apply all the steps" in order to be "defensible.").

26.  In their internal employee materials, both QIO contractors ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Pls. Ex. 32 to 2018 56(a)2 at 3 (Livanta presentation for its physician reviewers states ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓") (emphasis added); Pls. Ex. 29 to 2018 56(a)2 at KEPRO 0207 (Appendix to KePRO Employee Reference Manual ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

███████████████████████████"); KePRO Employee Reference Manual at KEPRO 0166 (Ex. 28 to 2018 56(a)2) ████████████████████████████████████████ ██████████████████████████████ (emphasis added).

27. CMS directs hospitals to comply with the Two-Midnight Rule to receive reimbursement from Medicare and as noted above (¶¶ 14-15), CMS has directed when physicians "should admit" beneficiaries as inpatients under the Rule. Hospitals comply with these directives because if they erroneously classify hospital stays as inpatient, under Medicare rules and guidelines they are subject to denial of inpatient payment, and providers exhibiting persistent non-compliance, including failing to adhere to the Rule or failing to improve their performance after QIO educational intervention, may be subject to referral to Recovery Audit Contractors (RACs). CMS Guidance for "Short-Stay Review" (Ex. 1 to 2018 56(a)2); Mercy Dep. at 26:1-28:1 (Ex. 45 to 2018 56(a)2); Ex. 31 to 2018 56(a)2 (example of QIO denial letter); Backus Dep. at 27:25-29:9 (Pls. Ex. 6) (doctors "think[] about . . . will this patient stay require greater than two midnights or not. And based on that thinking, they will admit the patient as an inpatient or place the patient on observation . . . ."); ¶ 16, *supra*; ¶ 28, *infra*.

28. Hospitals are required by Medicare to implement a utilization review (UR) plan to review the medical necessity of admissions and continued stays, and evidence indicates they incorporate and apply the Two-Midnight Rule in these plans. 42 C.F.R. § 482.30; *e.g.*, UR plan of Abington Hospital (Pls. Ex. 8); Mercy Dep. at 63:20-68:9 (Ex. 45 to 2018 56(a)2) (discussing Ex. 46 to 2018 56(a)2 (Two-Midnight Admission Review Workflow).

Dated:  February 20, 2019                             Respectfully submitted,

                                                      */s/ Alice Bers*
                                                      ALICE BERS
                                                      Federal Bar No. ct28749
                                                      abers@medicareadvocacy.org

        WEY-WEY KWOK
        Phv No. 03359
        wkwok@medicareadvocacy.org
        GILL DEFORD
        Federal Bar No. ct19269
        gdeford@medicareadvocacy.org
        JUDITH A. STEIN
        Federal Bar No. ct08654
        jstein@medicareadvocacy.org
        Center for Medicare Advocacy, Inc.
        P.O. Box 350
        Willimantic, CT 06226
        (860) 456-7790
        Fax (860) 456-2614

        REGAN BAILEY
        *pro hac vice*
        rbailey@justiceinaging.org
        CAROL WONG
        *pro hac vice*
        cwong@justiceinaging.org
        Justice in Aging
        1444 I Street, NW, Suite 1100
        Washington, DC 20005
        (202) 552-6743
        Fax (202) 289-7224

        ERIC CARLSON
        *pro hac vice*
        ecarlson@justiceinaging.org
        Justice in Aging
        3660 Wilshire Blvd., Suite 718
        Los Angeles, CA 90010
        (213) 639-0930
        Fax (213) 550-0501

        DAVID J. BERGER
        *pro hac vice*
        dberger@wsgr.com
        STEVEN GUGGENHEIM
        *pro hac vice*
        sguggenheim@wsgr.com
        LUKE A. LISS
        Bar No. phv07485
        lliss@wsgr.com
        DYLAN G. SAVAGE

Bar No. phv07487
dsavage@wsgr.com
ALEXANDER K. BREHNAN
Bar No. phv09624
abrehnan@wsgr.com
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
Fax (650) 565-5100

LINDSEY EDWARDS
*pro hac vice*
ledwards@wsgr.com
Wilson Sonsini Goodrich & Rosati
1700 K Street, NW Suite 500
Washington, DC 20006
(202) 973- 8959
Fax: (202) 973-8899

JASON B. MOLLICK
Bar No. phv07486
jmollick@wsgr.com
Wilson Sonsini Goodrich & Rosati
1301 Ave. of the Americas, 40th Fl.
New York, NY 10019
(212) 999-5800
Fax (212) 999-5899

*Attorneys for Plaintiffs, Intervenor-Plaintiffs, and Class Counsel*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 20, 2019, a copy of the foregoing Local Rule 56(a)2 Statement in Response to Defendant's Supplemental 56(a)1 Statement in Support of His Second Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept the electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                         */s/ Alice Bers*
                                                         ALICE BERS
                                                         Center for Medicare Advocacy