# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTINA ALEXANDER, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>ALEXANDER M. AZAR, II, Secretary of Health and Human Services,<br><br>    Defendant. | No. 3:11-cv-1703 (MPS) |

## **MEMORANDUM OF DECISION**

On March 27, 2019, I denied the Secretary's motion to dismiss for lack of standing, motion to decertify the class, and motion for summary judgment. (ECF No. 378.) Now pending before me are three matters related to that ruling: (1) the Secretary's "limited motion for clarification and reconsideration," (ECF No. 379); (2) the parties' supplemental briefing on the need to further subdivide the class, (ECF Nos. 384 and 385); and (3) four motions to seal documents filed in opposition to the motion for summary judgment (ECF No. 330, 337, 340, and 371). I assume familiarity with my prior ruling and address each matter in turn.

### I.    MOTION FOR RECONSIDERATION AND CLARIFICATION

In ruling on the Secretary's motions for summary judgment and class decertification, I explained that, given the age of the case and its tortuous procedural history, I would "*not consider further argument at this point on the merits of class certification in general or on the issues addressed in the summary judgment ruling, and the parties are not authorized to file further briefs on these issues.*" (ECF No. 378 at 43 n.14) I warned that "[t]he time for motion practice is over," and scheduled a status conference to choose a trial date. (*Id.* at 50.) Seven days

1

later, the Secretary filed a motion for reconsideration and clarification. (ECF No. 379.) For the reasons explained below, the motion is DENIED.

### A. Motion for Reconsideration

The Secretary first moves for reconsideration of my ruling on class decertification. The motion does not meet the strict standard for granting a motion for reconsideration, which requires that the movant "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The Secretary asserts that I "overlooked the fact there is no evidence that every Medicare beneficiary who spent at least three days as an inpatient, during the relevant time period required or even was recommended for post-hospitalization SNF care." Thus, he argues, the present class includes individuals who lack a cognizable injury for purposes of standing.[1] As I have explained, however, "the lack of expedited administrative review can force individuals who need SNF care but cannot afford it to forego critical care." (ECF No. 378 at 37 n. 11 (quoting *Alexander v. Price*, 275 F. Supp. 3d 313, 323 (D. Conn. 2017).) The Second Circuit has recognized that a class may include members whose injury is "simply. . . the fear or anxiety of future harm." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *see also id.* at 265 ("[T]hose members who completed a tax transaction but have not yet been audited still run the risk of being assessed a penalty under an exception to the statute of limitations."). Further, "[t]he person who has been accorded a procedural right to protect his

---

[1] The Secretary also suggests that I overlooked data presented by his expert showing that only a small proportion of Medicare beneficiaries who are hospitalized for three or more days will require care at a skilled nursing facility. (*See* ECF No. 379-1 at 9 (citing Declaration of Christopher Baugh, ECF No. 323-10, ¶¶ 32–34).) The Plaintiffs argued in their Local Rule 56(a)2 Statement that Dr. Baugh's conclusions do not follow from the evidence he cites. (*See* ECF No. 331-1 at 15–16.) The Plaintiffs' arguments are, at the very least, sufficient to create a triable question of fact.

2

concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.7 (1992). The motion offers a different gloss on the same arguments that the Secretary already presented, and it cites only cases and data that I considered in my original ruling. The motion for reconsideration is therefore DENIED.

I do not intend to imply that the class definition is now set in stone. "[B]ecause the results of class proceedings are binding on absent class members, *see* Fed. R. Civ. P. 23(c)(3), the district court has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case." *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016). The duty to "monitor," however, does not include an obligation to modify the class definition in real time in response to the parties' arguments. The Secretary has not presented evidence suggesting modifying the class definition now would meaningfully alter the scope of the trial.[2] I will review the class definition in light of the evidence presented at trial and with the input of both parties.

### B. Motion for Clarification

---

[2] For example, the Secretary argues that no injunction could redress the injuries of individuals who were hospitalized in the past and who chose to forego SNF care. He asserts that, even if these individuals successfully established that they should have been admitted as inpatients, Medicare could not reimburse them for care they chose to forego months or years earlier. These individuals would not present different evidence to establish the existence of a protected property interest in being admitted as inpatients than other beneficiaries hospitalized during the same period. Given my obligation to review the class definition in light of evidence presented at trial, I decline to amend it now without a convincing showing that doing so would affect the parties' trial preparation. Nevertheless, the parties should discuss the question whether the requested injunction would redress any harm suffered by persons who were hospitalized for more than three nights and, because they were not designated as inpatients, chose to forego SNF care. Specifically, they should confer about that issue in preparing the joint trial memorandum and should be prepared to address it at the pretrial conference on July 29. As I have noted several times previously, the class definition can be amended up until the time judgment is entered; but the Secretary presents no reason to continue tinkering with it before the trial.

3

The Secretary next requests clarification of a portion of my ruling on summary judgment. Specifically, I held that the evidence in the record was "sufficient to allow a reasonable factfinder to conclude that the Two Midnight Rule, as implemented, meaningfully channels the discretion of doctors and hospitals in deciding whether to admit a beneficiary as an inpatient." (ECF No. 378 at 14–15 (quotation marks omitted).) Thus, there is a material dispute of fact about whether the Plaintiffs have a protected property interest in being admitted as inpatients rather than treated as outpatients on observation status. The Secretary requests elaboration of (1) the criteria established by the Two Midnight Rule that give rise to a protected property interest; (2) the evidence in the record showing that CMS has established such criteria; and (3) the legal framework the Court applied to determine that those criteria establish a protected property interest. "Clarification of a prior order is within the issuing judge's discretion and appropriate to add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous." *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, No. 3:09-CV-1521 (JCH), 2012 WL 13024369, at *5 (D. Conn. May 10, 2012) (quotation marks omitted). Here, the Secretary does not seek clarification to comply with an order, but requests that the Court provide further explanation of an earlier ruling "so that [he] can make sure he prepares and presents the most appropriate evidence at trial, tailors his presentation to the Court's rulings, and presents evidence in the most efficient and helpful manner for the Court." (ECF No. 379-1 at 7.)

The Court's role on summary judgment is to determine whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."). Its role is not to provide the parties with a roadmap for the trial. I explained why I found that there existed a triable issue of fact about whether the Two Midnight Rule, as implemented, creates a protected property interest. (*See* ECF No. 378 at 15–20.) I also identified evidence that I found demonstrated the existence of genuine disputes of material fact. (*Id.* at 20–25.) I have twice denied summary judgment in this case and written lengthy opinions each time, which goes beyond the requirements of Rule 56. *See* Fed. R. Civ. P. 56 advisory committee's note to the 2010 amendment ("It is particularly important to state the reasons for granting summary judgment . . . The statement denying summary judgment need not address every available reason."). I decline to expound upon my reasoning further. The motion for clarification is DENIED.

## II. SUPPLEMENTAL BRIEFING ON CLASS CERTIFICATION

In ruling on the Secretary's motion to decertify the class, I adopted the following modified class definition:

> All Medicare beneficiaries who, on or after January 1, 2009: (1) have received or will have received "observation services" as an outpatient during a hospitalization; (2) have received or will have received an initial determination or Medicare Outpatient Observation Notice (MOON) indicating that the observation services are not covered under Medicare Part A; and (3) either (a) were not enrolled in Part B coverage at the time of their hospitalization; or (b) stayed at the hospital for three or more consecutive days but were designated as inpatients for fewer than three days. Medicare beneficiaries who meet the requirements of the foregoing sentence but who pursued an administrative appeal and received a final decision of the Secretary before September 4, 2011, are excluded from this definition.

(ECF No. 378 at 41.) I noted, however, that it might be necessary to subdivide the class. The current class includes two arguably-distinct groups:

> (1) Medicare beneficiaries hospitalized before October 2013 who assert a property interest based on the use of commercial screening tools; and (2) Medicare beneficiaries hospitalized after October 2013 who assert a property interest under the Two Midnight Rule.

(*Id.*) I therefore directed the parties to file supplemental briefs addressing whether I should (1) create formal subclasses pursuant to Fed. R. Civ. P. 23(c)(5) and appoint separate counsel for each; (2) subdivide the class only for purposes of case management under Fed. R. Civ. P. 23(d); or (3) allow the case to proceed to trial with a single class under the newly certified class definition. Having reviewed the parties' supplemental briefs, I now find that there is no "fundamental conflict" between the pre-October 2013 and post-October 2013 Plaintiffs, and that neither formal nor informal subdivision of the class is required.

### A. Formal Subclasses under Rule 23(c)(5)

Rule 23(a)(4) provides that the parties representing a class must "fairly and adequately protect the interests of the class." "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) "Subclassing is one mechanism, though not the only one, by which courts can solve conflict of interest problems in class suits." 3 Newberg on Class Actions § 7:31 (5th ed. 2018). "The discretion inherent in the Court's power to determine whether a class action may be maintained necessarily requires equally broad discretion in determining, on the motion of a party or *sua sponte*, whether to create subclasses . . . ." *Burka v. New York City Transit Auth.*, 110 F.R.D. 595, 603 (S.D.N.Y. 1986). The presence of a conflict alone does not necessarily require division of the class—"the conflict must be fundamental." *Denny*, 443 F.3d at 268 (quotation marks omitted). A conflict is fundamental if it "goes to the very heart of the litigation." *Charron v. Weiner*, 731 F.3d 241, 250 (2d. Cir. 2013) (quotation marks omitted).

As I explained in modifying the class definition in this case, it is possible that the interests of the pre-October 2013 and post-October 2013 plaintiffs may diverge, particularly at

the remedy stage. (ECF No. 378 at 42 ("Although a single injunction could potentially redress the procedural deprivation and financial injuries suffered by both groups, each might have reason to seek a different form of hearing depending on the standard that applies.") The Secretary latches onto this suggestion, arguing that the possibility that the two groups could seek different hearings represents a fundamental conflict between them requiring subclasses. But a conflict is not "fundamental" if it is "merely speculative or hypothetical." *In re Literary Works in Electric Databases Copyright Litig.*, 654 F.3d 242, 259 (2d Cir. 2011) (quotation marks omitted). Further, both groups seek a hearing to challenge their designation as "observation" rather than inpatient. True, if both groups prove their due process claims, it is plausible that the *Mathews* factors will militate toward a more intensive hearing for one group or the other. It is equally plausible, however, that a single form of hearing would best serve both groups' interests by reducing the overall administrative burden to the Government in developing new procedures. There is not enough evidence in the record to do more than speculate about the scope of the potential hearing should either or both groups prevail. Further, even if their interests diverge with respect to some aspects of their claim, there is no reason to believe that the two groups would be in "fundamental" conflict. That is, each group could argue in favor of the appropriate hearing without prejudicing the other. As a result, formal subclasses are not required.

The Secretary also argues that the class, as currently defined, does not meet the requirements of Rule 23(a) or Rule 23(b)(2). (*See* ECF No. 385 at 6–8, 11–15.) The Secretary effectively argues—again—that the class should be decertified. (*E.g.*, *id.* at 6 ("The current class is improper under Rule 23(b)(2) . . . ."); *id.*, at 13 ("[N]o named Plaintiff raises a due process claim based on a protected property interest allegedly arising form the 'implementation'

7

activities cited in the Court's ruling."). In soliciting supplemental briefs on the need to subdivide the class, I warned

> I will *not* consider further argument at this point on the merits of class certification in general or on the issues addressed in the summary judgment ruling, and the parties are not authorized to file further briefs on these issues. Nor will I consider argument that either of the two sub-groups I have identified should be excluded from the class definition or decertified. I have already considered lengthy briefs and oral arguments on these matters and have identified sufficient questions of material fact to warrant a trial for both of these groups. The question for supplemental briefing is simply intended to determine the best way to protect the interest of all class members.

(ECF No. 378 at 43 n.14 (emphasis in original).) I decline to address the Secretary's arguments because they plainly fail to comply with my instructions.

### B. Case Management Subclasses under Rule 23(d)

In the absence of "fundamental conflict," I may also create informal subclasses for case management purposes under Rule 23(d). *See Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 786 (9th Cir. 1982) ("The creation of subclass IV was within the district court's broad power under Fed. R. Civ. P. 23(d) to adopt procedural innovations to facilitate management of the class action."); *see also Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2017 WL 3868803, at *5 (S.D.N.Y. Sept. 5, 2017) ("If Plaintiffs' theories depend on distinct proof or legal questions common to some class members, subclasses may be created for purposes of case management."), *leave to appeal denied*, No. 17-2911, 2017 WL 6506349 (2d Cir. Dec. 19, 2017)

The Secretary argues that I should informally divide the class because some evidence may only be relevant for the pre-October 2013 or post-October 2013 Plaintiffs. (ECF No. 385 at 10.)[3] The Plaintiffs argue that subdivision is unnecessary. They assert that case management is

---

[3] Even within those groups, the Secretary argues that further subdivision may be necessary. For example, he asserts that some evidence about the implementation of the Two

less of a concern now that discovery is complete, and that subdivision "would not change the manner in which [they would] present their case at trial." (ECF No. 384 at 5.)

I decline to subdivide the class for case management purposes. Plaintiffs' counsel has acknowledged that the class is conceptually divisible into two groups. (*See* Oral Arg. Transcr., ECF No. 363 at 67:11–14 (Plaintiffs' counsel: "I see the classes divided into 2009 up to the point where the Two Midnight Rule was introduced in 2013. So Two Midnight Rule [as the basis of a property interest] for 2013 forward, and commercial screening tools for the period before that.").) The Plaintiffs nevertheless seek to present a unified case, focusing on the factual and legal issues common to the entire class. In turn, the Secretary is free to offer evidence at trial specific to the pre- and post-October 2013 groups. I am aware of the October 2013 demarcation point and will keep it in mind during the trial. I cannot conclude that the trial would be significantly more orderly or efficient if I informally divided the class, and I will not dictate the manner in which the Plaintiffs must present their case without a compelling reason for doing so.

### III.    MOTIONS TO SEAL

As required by the protective order in this case, the Plaintiffs filed under seal all documents obtained from third-party producers marked by the third-party producers as confidential. The Plaintiffs also filed motions to continue maintaining those documents under seal, and to redact the portions of their memoranda that describe the documents. (ECF No. 330, 371.) The Plaintiffs'

---

Midnight Rule is irrelevant to the post-October 2013 Plaintiffs who were hospitalized before implementation activities for the new rule began in earnest. (ECF No. 385 at 4.) Thus, the post-October 2013 subclass should be broken further into pre-implementation and post-implementation groups. This appears to be yet another attempt to reargue the merits, but in any event, I disagree. Implementation activities that post-date a class member's hospitalization may be relevant to that class member if the Plaintiffs can establish that CMS's standards for inpatient reimbursement were consistent over time and the training that CMS provided to hospitals reflected its pre-existing views on the manner in which providers should make inpatient admission decisions under the rule.

motions did not state with particularity the need to maintain the documents under seal but requested that the Court permit the third-party producers to file memoranda explaining why they should not be disclosed publicly. Accordingly, I provided the third-party producers with an opportunity to "make a particularized showing as to the need to keep the documents sealed pursuant to Local Rule of Civil Procedure 5(e)." (ECF No. 336.) Two third-party producers accepted that invitation, and the parties filed motions on their behalves to continue to maintain under seal a subset of the documents identified in the Plaintiffs' motions. (*See* ECF No. 337, 340, 377.) For the reasons set forth below, the motions to seal (ECF No. 330, 337, 340, and 371) are GRANTED in part and DENIED in part.

### A. Legal Standard

"[I]t is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quotation marks omitted). Courts apply "a presumption favoring access to judicial records," *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995). The right of access, however, is not absolute. *Nixon v. Warner Communications*, 435 U.S. 589, 602 (1978). Courts must "weigh the interest advanced by the parties in light of the public interest and the duty of the courts." *Id.* This task is "one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599. "The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Lugosch*, 435 F.3d at 119. "[A]fter determining

the weight of the presumption of access, the court must balance competing considerations against it." *Id.* at 120 (quotation marks omitted).

### B. Discussion

The Plaintiffs' motions seek to seal the following documents filed in support of their memorandum in opposition to summary judgment, as well as the portions of their memorandum and Local Rule 56(a) statement describing the documents: Exhibits 2, 3, 5, 6, 7, 8, 9, 15, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 45, 46, and 48 (ECF Nos. 331-1 through 331-30.) They also request to seal Exhibits 1 and 5 (and related portions of their memorandum and Local Rule 56(a) statement) filed in support of their supplemental summary judgment brief. (ECF Nos. 372-2 and 372-3.) The documents fall into three categories: (1) documents produced by Quality Improvement Organizations ("QIOs"); (2) documents produced by hospitals or other providers participating in Medicare; and (3) documents produced by the Department of Health and Human Services or CMS.

#### *1. Documents Produced by QIOs*

In their opposition to the Secretary's motion for summary judgment, the Plaintiffs relied on several documents produced by QIOs. As I explained in ruling on the Secretary's motion, QIOs conduct medical review of hospitals' claims for reimbursement for inpatient services submitted under the Two Midnight Rule. (ECF No. 378 at 12.) Both QIOs—Livanta, LLC ("Livanta") and Keystone Peer Review Organization, Inc. ("KEPRO")—have filed memoranda in support of continued sealing of the documents that they produced ("the QIO documents").

The public's interest in reviewing the QIO documents is modest. "Class actions are by definition of public interest because some members of the public are members of the case, and the standards for denying public access to the record should therefore be strictly construed." *Grayson*

*v. Gen. Elec. Co.*, No. 3:13-cv-1799-WWE, 2017 WL 923907, at *1 (D. Conn. Mar. 7, 2017). Here, though, the public's interest is somewhat diminished given the procedural posture of the case. No party in the case seeks to unseal the QIO documents, and I am unaware of any third-party interest in reviewing them. I recently denied the Secretary's motion for summary judgment and scheduled the case for trial. The Second Circuit has acknowledged "that where a district court denied the summary judgment motion, essentially postponing a final determination of substantive legal rights, the public interest in access [to documents filed in connection with the summary judgment briefing] is not as pressing." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). Further, while the QIO documents informed my decision on summary judgment, I did not rely on them in denying the motion. Finally, this case is scheduled for trial in two and a half months. To the extent that these documents are relevant to any determination of the Plaintiff's substantive legal rights, they will be presented at trial and likely available for public review. *See id.* (quotation marks omitted) ("[T]he public has an especially strong right of access to evidence introduced in trials.")

Livanta and KEPRO have a significant interest in maintaining the documents that they produced under seal. CMS awards contracts to organizations to serve as QIOs for different geographic regions through a competitive bidding process. (*See* Roland Decl., ECF No. 337-1 ¶¶ 2–3.) Both KEPRO and Livanta compete for these contracts, including task order contracts for completing short stay reviews under the Two Midnight Rule. (*See* ECF No. 337-1 ¶ 3; ECF No. 340-1 at 7.) The documents at issue disclose the procedures that KEPRO and Livanta use in conducting short stay reviews. KEPRO and Livanta explain that they each developed their respective review procedures internally, and the methods that they use form the basis of their submissions to CMS to obtain or renew their contracts. They assert that if a competitor had access to these documents it would place KEPRO and Livanta at a competitive disadvantage in the

contract bidding process. "[C]onfidential commercial information of a business—including trade secrets, confidential research, internal business documents and information about a business's operations—has been recognized repeatedly as a proper subject for sealing. *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-CV-1897 (CSH), 2017 WL 4750701, at *3 (D. Conn. July 12, 2017) (quotation marks omitted).

Given the modest public interest in reviewing these documents at this stage of case, KEPRO and Livanta have provided an adequate basis to seal the following documents: Plaintiffs' Exhibit Numbers 20–24 (ECF Nos. 331-10 through 331-14), 27 (ECF No. 331-17), 28 (ECF No. 331-18), 30–37 (ECF No. 331-20 through 331-27), and Plaintiffs' Supplemental Exhibit 5 (ECF No. 372-3).[4]

2. *Documents and Transcripts from Hospitals and Providers*

The Plaintiffs also filed excerpts from the transcript of the deposition of a representative of Mercy Hospital (ECF Nos. 331-28, 372-2), an exhibit related to that deposition (ECF No. 331-29), and excerpts from the transcript of the deposition of Dr. Julia Kyle. (ECF No. 331- 30.) The Plaintiffs' motions do not state an adequate basis for sealing these documents. First, the Plaintiffs' do not attempt to make a "particularized showing" as to the need to seal the Mercy Hospital deposition or exhibits, and Mercy Hospital did not accept the invitation to attempt to make such a showing on its own behalf. Second, the Plaintiffs explain that they seek to seal the deposition of Dr. Kyle "in an abundance of caution" because Dr. Kyle discussed her experience

---

[4] KEPRO represents that Plaintiffs' Exhibit 29 (ECF No. 331-19) includes seven pages with proprietary and confidential material, while the remainder of the document is not proprietary and confidential and may be publicly disclosed. (ECF No. 340-1 at 8.) Within 14 days of this ruling, KEPRO may file a redacted version of Plaintiffs' Exhibit 29 on the docket in accordance with Local Rule 5(e). Should KEPRO fail to file a redacted version with 14 days, the Court will unseal the document in its current form.

treating one Medicare beneficiary. (ECF No. 330 at 2.) The deposition transcript does not include the patient's name or other identifiable information. *See* 45 C.F.R. § 164.514(b)(2) (listing 18 identifiers that must be removed before private health information is considered "de-identified," none of which are included in the transcript excerpts). It does not appear that sealing is necessary to protect the unnamed patient's privacy. As a result, the Plaintiffs' motions are DENIED to the extent that they request to maintain the foregoing documents under seal.

### 3. Documents Produced by the Department of Health and Human Services and CMS

The Plaintiffs filed several documents produced by CMS and the Department of Health and Human Services. (Plaintiffs' Exhibits 2, 3, 5– 9, and 15, ECF Nos. 331-2 through 331-9.) The Secretary does not seek to maintain any of these documents under seal. (ECF No. 341.) KEPRO requests to seal four of the documents because they "contain minutes of meetings that include the KEPRO Medical Directors. These individuals are practicing physicians and serve as peer reviewers for KEPRO." (ECF No. 340-1.) But the identities of KEPRO's Medical Directors are readily available on the organization's website. *See Management*, KEPRO BFCC-QIO, https://www.keproqio.com/aboutus/management (last accessed May 28, 2019). I will not order these documents sealed when the information that purportedly requires sealing is so easily accessible elsewhere.

### 4. Plaintiffs' Local Rule 56(a)2 Statements and Memoranda

The Plaintiffs lastly request to seal the portions of their Local Rule 56(a)2 statements and memoranda of law that describe or reference any of the foregoing material. Their motions do not provide an adequate basis for sealing these documents. With respect to the CMS and hospital/provider documents, the Plaintiffs' motion is inadequate for the same reasons as those

discussed for the documents themselves. With respect to the KEPRO and Livanta documents, the Plaintiffs memoranda and Local Rule 56(a)2 statements describe the documents only at a high level of generality, and the portions of the documents they quote could not provide a competitor with meaningful insight into the organizations' proprietary processes. There is little or no risk that the organizations would face a competitive disadvantage if the material from the Plaintiffs' Local Rule statements and memoranda were disclosed.[5] The Plaintiffs' motion is therefore DENIED to the extent that it seeks to redact portions of the Plaintiffs' memoranda in opposition to summary judgment or Local Rule 56(a)2 Statements.

### C. Conclusion

For the foregoing reasons, the motions to seal (ECF No. 330, 337, 340, and 371) are GRANTED in part and DENIED in part. The following documents may remain under seal: Plaintiffs' Exhibits 20–24, 27, 28, 30–37, and Supplemental Exhibit 5 (ECF Nos. 331-10 through 331-14; 331-17; 331-18; 331-20 through 331-27; and 372-3.)

The Clerk is directed to unseal the following documents: Plaintiffs' Motion to Seal (ECF No. 330); Plaintiffs' Unredacted Memorandum of Law in Opposition to Summary Judgment (ECF No. 331); Plaintiffs' Local Rule 56(a)2 Statement (ECF No. 331-1); Plaintiffs' Exhibits 2, 3, 5, 6, 7, 8, 9, 15, 25, 26, 45, 46, 48, and Supplemental Exhibit 1 (ECF Nos. 331-2 through 331-9; 331-15; 331-16; 331-19; 331-28 through 331-30; 372-2); Plaintiffs' Supplemental Memorandum of Law in Opposition to Summary Judgment (ECF No. 372); Plaintiffs' Supplemental Local Rule 56(a)2 Statement (ECF No. 372-1); and Livanta's memoranda in support of continued sealing (ECF Nos. 337, 371).

---

[5] Livanta's memoranda in support of continued sealing (ECF Nos. 337, 371) similarly provide only general descriptions of the documents at issue, and I find that there is no adequate basis for maintaining its filings under seal.

KEPRO may file a redacted version of Plaintiffs' Exhibit 29 (ECF No. 331-19) within 14 days. If KEPRO does not file a redacted version, the Court will direct the Clerk to unseal the document.

IT IS SO ORDERED.

      /s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
               June 4, 2019