UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTINA ALEXANDER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEXANDER M. AZAR, II, Secretary of Health and Human Services, <br><br> Defendant. | No. 3:11-cv-1703 (MPS) |

### ORDER CONCERNING POST-TRIAL BRIEFS

As discussed at trial, the Plaintiffs' post-trial brief will be due **September 19, 2019**. The Defendant's post-trial brief will be due **30 days** from the filing of the Plaintiffs' post-trial brief. The Plaintiffs' reply will be due **15 days** from the filing of the Defendants' post-trial brief.

The Plaintiffs' post-trial brief will be limited to a total of 50 pages, with 40-45 pages dedicated to the Plaintiffs' proposed findings of fact and conclusions of law and 5-10 pages dedicated to answering the questions the Court poses below. The Defendant's post-trial brief will be limited to a total of 65 pages, apportioned as follows: 40-45 pages for the Defendant's proposed findings of fact and conclusions of law, 5-10 pages for responding to the Court's questions, and 15 pages for responding to the Plaintiffs' post-trial brief. The Plaintiffs' reply to the Defendant's post-trial brief will be limited to 15 pages.

The Court requests that the parties address the following questions in their briefs. The parties should not infer based on the formulation of these questions, or based on the fact that the Court is asking these questions, that the Court has reached a decision on any of the issues in this case. It has not.

**Question 1**

If the Court infers from Dr. Baugh's testimony that, for beneficiaries placed on observation in a hospital EDOU, (1) the decision to place them on observation is made on the basis of a physician's clinical judgment guided by the EDOU's protocols but not by the two-midnight rule or any other government-specified standard and (2) that such beneficiaries, if discharged from the EDOU to home, are billed under Medicare Part B, then should the Court exclude such beneficiaries from the class, on the theory that they both lack a property interest (in that the decision to place them on observation and bill them under Part B was not "meaningfully channeled" by government criteria) and cannot show state action?

**Question 2**

Should the Court limit the class to persons initially designated as "inpatient" by the physician but whose status is subsequently changed to "observation," on the theory that (1) in such a case, by definition, there was at one time an inpatient physician order, and (2) there may be clearer evidence in such a case that the physician's initial judgment was supplanted by hospital staff (or contractors) applying fixed and objective criteria as part of a government-required utilization review process?  Note that *Blum v. Yaretsky*, 102 S.Ct. 2777 (1982); *Kraemer v. Heckler*, 737 F.2d 214 (2d Cir. 1984); and *Catanzano v. Dowling*, 60 F.3d 113 (2d Cir. 1995) appear to draw a distinction between the patient's physician and the provider's internal reviewing body (either the URC or, in *Catanzano*, the CHHA) for purposes of state action.

**Question 3**

In the Second Intervenor Complaint, Plaintiffs ask this Court to order the Secretary "to establish a procedure for administrative review of a decision to place a Medicare beneficiary on observation status, including the right to expedited review" and to provide class members with an

opportunity "to challenge their classification as observation status and, if it is found that inpatient admission was appropriate, adjust the Medicare coverage of each beneficiary's hospitalization and post-hospital SNF care accordingly." (ECF No. 123 at 28-29.) What specific remedy do Plaintiffs propose? For example, what timeline do Plaintiffs propose for expedited reviews? How many levels of review do Plaintiffs propose and what deadlines would apply at each stage? What specific relief would a patient receive if his or her appeal was successful? Would the relief be any different if the patient has already been discharged versus if the patient is still being treated at the hospital? How does the proposed remedy fit with the regulations and statutory provisions governing eligibility for SNF coverage, including 42 C.F.R. § 409.30 and 42 U.S.C. § 1395x(i)? What, if any, regulations or statutory provisions would this Court need to find unconstitutional in order to provide Plaintiffs with the requested relief? In the Defendant's response to this question, it may, of course, critique the Plaintiffs' response, for example, by pointing out any legal, fiscal, or administrative obstacles to the Plaintiffs' specific proposal.

**Question 4**

Do those members of the class, as currently defined, who (a) have Part B coverage, (b) stayed at the hospital for three or more days, (c) chose not to go to a skilled nursing facility (regardless of the reason), and (d) were discharged from the hospital more than 30 days ago, satisfy the redressability requirement of standing, in light of 42 C.F.R. § 409.30, which requires the patient to enter the skilled nursing facility within 30 days of hospital discharge? How would the requested relief—an administrative hearing—redress the injuries of such persons? Finally, what evidence is there (cite exhibits and/or trial testimony) showing that such persons still have a medical need to be admitted to a skilled nursing facility for care related to their hospitalization? If the Court

concludes that such persons cannot satisfy the redressability requirement of standing, should it exclude them from the class?

**Question 5**

For the period prior to the adoption of the two-midnight rule, what evidence is there (cite exhibits and/or trial testimony) showing that the physicians who wrote the initial orders designating patients "inpatient" or "observation" were doing so on the basis of government-specified, fixed and objective criteria?

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         August 23, 2019