UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTINA ALEXANDER, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> XAVIER BECERRA, Secretary of Health & Human Services, <br><br> *Defendant*. | No. 3:11-cv-01703-MPS |

**RULING ON MOTION FOR ATTORNEYS' FEES AND COSTS**

The plaintiffs in this long-running case against the Secretary of Health and Human Services ("HHS") have filed a post-judgment motion for attorneys' fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), which requires the court to "award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought . . . against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The Government opposes the award on the ground that its position was "substantially justified" and that, in any event, the amount sought is unreasonable. Because I find that the Government has borne its burden of showing that its position was substantially justified, I DENY the motion.

I assume familiarity with the parties' briefs and the lengthy procedural history of this case, which is set out in detail in my opinion following the bench trial and the Court of Appeals' opinion affirming the judgment. *See Alexander v. Azar*, -- F.Supp.3d --, 2020 WL 1430089, at *3-6 (D. Conn. Mar. 24, 2020), *aff'd sub. Nom. Barrows v. Becerra*, 24 F.4th 116 (2d Cir. 2022). The judgment granted a permanent injunction in favor of a class of Medicare beneficiaries requiring the Secretary of Health & Human Services to adopt certain appeal procedures for hospitalized class members whose status is changed from "inpatient" to "observation," a change

1

that may result in substantially increased costs for class members. I recount below only so much of the procedural history and of the issues in the case as is necessary to provide an understanding of my reasoning.

I.      LEGAL STANDARD

"[A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This statutory basis for attorneys' fees requires:

> (1) that the claimant be a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 189 (2d Cir. 2000) (citation omitted). The Government's position was "substantially justified" if it had "a reasonable basis both in law and in fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "The Government bears the burden of showing that its position was 'substantially justified,' and to meet that burden, it must make a strong showing that its action was justified to a degree that could satisfy a reasonable person." *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007) (internal quotation marks omitted). "When assessing the position of the United States," courts "review both the position taken by the United States in the civil action, [and] the action or failure to act by the agency upon which the civil action is based." *Ericksson v. Commr. of Soc. Sec.*, 557 F.3d 79, 82 (2d Cir. 2009) (citation and internal quotation marks omitted); *accord Smith v. Bowen,* 867 F.2d 731, 734 (2d Cir. 1989) ("Congress made clear that for EAJA purposes, a court should inquire into both the underlying

agency determination affecting the party, as well as the Government's litigation strategy in defense of that determination."). "[I]t is well-established that the Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not substantially justified." *Healey*, 485 F.3d at 67 (citation and internal quotation marks omitted). And the Government must be substantially justified in its position on the particular issues on which it lost the case. *See Maxey v. Chater*, 93-CV-606 (RSP/GJD), 1996 WL 492906, at *3 (N.D.N.Y. Aug. 28, 1996) (the government "cannot prevail by arguing that [it] was substantially justified in some of the positions [it] took if [it] was not substantially justified on the [dispositive] issue") (citing *Myers v. Sullivan*, 916 F.2d 659, 666 n.5 (11th Cir. 1990) ("it is not sufficient for the government to show that some of its earlier positions or arguments were valid. Unless the government can establish that *all* of its positions were substantially justified, the claimant is entitled to receive attorney's fees" (emphasis added))).

**II.    DISCUSSION**

The parties agree that the plaintiffs have satisfied three of the four requirements that they must satisfy to be awarded fees under the EAJA, i.e., they agree that the plaintiffs are prevailing parties, that no special circumstances would make an award unjust (or at least the Government does not cite any), and that the fee application is timely. They disagree, however, about whether the Government's position was "substantially justified."

As the judge who has presided over this case for more than a decade, I agree with the Government that it has been legally and factually complex, and I have found few cases to be more difficult. While not all the legal issues were difficult, the path of analysis through the core issues was long, thorny, and poorly illuminated by existing legal precedents. The only claim that advanced to trial was the plaintiffs' due process claim under the Fifth Amendment. Due process

of law — and, more concretely, the right to notice and a hearing when the Government deprives a citizen of a property right recognized by the law — is an easy concept to understand in the abstract but was a difficult one to apply in the context of a highly complex Government benefits program that relies on a combination of private actors and Government incentives to fulfill its mandates.  There was no case law anywhere in the country, let alone within the Second Circuit, that addressed an issue that was reasonably close to the one on which this case ultimately hinged, i.e., whether the Court should recognize a property interest in Medicare coverage for a Medicare beneficiary whose status was changed from inpatient to "observation" while he or she was a patient in a hospital. *See Vacchio v. Ashcroft*, 404 F.3d 663, 675 (2d Cir. 2005) ("the issue is far from settled law, the Government's legal argument is far from unreasonable, and it thus cannot be said that the Government's position on the question is not substantially justified"); *accord Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) (suggesting that Government is substantially justified if they "lost because an unsettled question was resolved unfavorably").  To be sure, there were precedents addressing the property interest analysis in other contexts within the Medicare program, but none of those contexts was factually close enough to this one to provide me — or the parties, including the Government — with clear guidance on whether to recognize a property interest in this situation.  *See, e.g.*, *Schweiker v. McClure*, 456 U.S. 188, 198-201 (1982) (applying due process analysis in upholding Congress's permitting hearing officers selected by private insurance carriers to adjudicate appeals of deprivations of Medicare Part B (i.e., outpatient) benefits, but not addressing property interest issue or state action); *Kraemer v. Heckler*, 737 F.2d 214 (2d Cir. 1984) (reversing grant of summary judgment for Secretary because plaintiffs challenging termination of their Medicare Part A coverage for hospital and skilled nursing facility stays — which required them to leave the hospital or SNF

4

unless they could pay for it themselves — had raised genuine disputes of material fact about state action due to the involvement of the highly regulated utilization review committee in such decisions; not addressing property interest issue) *Isaacs v. Bowen*, 865 F.2d 468, 475-77 (2d Cir. 1989) (addressing adequacy of procedures for deprivation of Medicare Part B benefits and whether delay from additional hearings was unreasonable, but not addressing property interest issue or state action).  In the end, it took a seven-day bench trial, careful analysis of the plaintiffs' various theories in the case — a principal one of which I rejected — and a survey of available "property interest" precedents for me to arrive at the conclusion that a Medicare beneficiary admitted as an inpatient to a hospital has a property interest in Part A coverage, one that is stripped from her when her status is changed to "observation."

And that was just the property interest piece of the case, which was only part of what the plaintiffs had to prove to prevail.  Another piece — state action — was more clearly illuminated by factually related precedent, but the closest precedents arguably pointed in opposite directions, creating further uncertainty about the correct result.  *See, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1003-12 (1982) (no state action when nursing home decided to discharge or transfer patients because decision was not sufficiently influenced by state); *Catanzano by Catanzano v. Dowling*, 60 F.3d 113, 117-21 (2d Cir. 1995) (state action when home healthcare agencies decided whether care was necessary and reimbursable under Medicaid because agencies were deeply integrated into state administrative scheme, were required to make decisions in reference to regulation, and had been effectively delegated state decision-making authority); *Kraemer v. Heckler*, 737 F.2d 214, 218-23 (2d Cir. 1984) (genuine dispute of material fact about state action due in part to involvement of highly regulated utilization review committee in decisions to terminate Part A coverage for beneficiaries in hospitals and nursing homes).

5

In urging me to find that the Government's position was not substantially justified, the plaintiffs argue that "it is not reasonable … to be told that one is an 'outpatient' receiving observation services when one has no way to distinguish between inpatient and outpatient care and may have been hospitalized for several days." ECF No. 487-1 at 16. As the Government points out, however, this assertion proves too much: The plaintiffs did not prevail in this case in their broad attack against the use of "observation status" for all Medicare beneficiaries who are hospitalized; in fact, I found that there was no property interest in inpatient admission — a finding plaintiffs did not appeal — which meant that persons placed on "observation" but never admitted as "inpatient" by a physician had no property interest and thus no due process claim. Instead, I granted relief only in favor of a narrower class of individuals who had been admitted as inpatients, which I found gave them a property interest in Part A coverage, one deprived when they were switched to "observation" status. So regardless of whether, as a general matter, "it is not reasonable" to be told that one is on observation status when one has been hospitalized for several days, it is not a due process violation, which means that the plaintiffs have not prevailed on that claim.

The plaintiffs also argue that "the Secretary was aware of the stakes involved," i.e., the Secretary knew that Medicare beneficiaries could incur very substantial costs as a result of a decision to place them on observation status rather than to admit them as an inpatient. ECF No. 487-1 at 16. This is undoubtedly true, but it does not move the needle either, because the Secretary's awareness that the decision regarding observation vs. inpatient carried weighty financial consequences for beneficiaries does not equate to awareness — or even a reasonable

6

belief — that its legal position on that issue might be flawed.[1] Further, as noted, the Secretary's position on that issue was correct, insofar as it pertained to plaintiffs' broad claim that all Medicare beneficiaries placed on observation status while in the hospital were suffering a due process violation. I cannot find the Secretary's position on the issue was not "substantially justified" simply because the stakes were high when the same high stakes applied to the broader issue on which the Secretary prevailed.

The plaintiffs' separate argument that the availability of appeals for beneficiaries in other parts of the Medicare system made the absence of an appeal in the context of this case not "substantially justified," ECF No. 487-1 at 17, fails for a similar reason. I found no due process violation in the absence of an appeal procedure for Medicare beneficiaries who were much more closely situated to the prevailing class members here — namely, all Medicare beneficiaries who are hospitalized and placed on observation status but never admitted as inpatients to the hospital — than the Medicare beneficiaries who enjoy appellate rights in other parts of the Medicare system. Because the absence of appeal rights for Medicare beneficiaries only a step removed from prevailing class members raises no due process concern, the availability of such rights for other Medicare beneficiaries in different regulatory contexts does not preclude a finding that the Secretary's position that the prevailing class members were not entitled to an appeal was substantially justified. The same point applies to analogies the plaintiffs draw to other public benefit programs. *See* ECF No. 487-1 at 17. Given the absence of factually close legal precedents on the property interest issue, and arguably conflicting legal precedents on the state

---

[1] Indeed, I was aware, at the time I granted the Government's motion to dismiss the case in its entirety, that the stakes were high, *Bagnall v. Sebelius*, 2013 WL 5346659 *1 (D. Conn. Sept. 23, 2013) ("A lot turns on whether a Medicare recipient is classified as an 'inpatient' when she is hospitalized."), but that did not prevent me from following what I thought at the time was the correct legal course and dismissing the complaint in my initial ruling. The Government's awareness that the consequences for beneficiaries of taking the position it took might be severe does not make that position substantially unjustified, any more than a judge's awareness that the consequences of his ruling against a party may be severe makes the ruling erroneous.

action issue, neither the high stakes nor the existing legal landscape at the time the case was filed and while it was being litigated made the Government's position unreasonable "both in law and fact." *Pierce*, 487 U.S. at 565.

A review of the procedural history of the case confirms that the Government's position was reasonable. The Government initially won the case at the district court level, as I granted its motion to dismiss all nine claims in the original complaint, including the due process claim on which the plaintiffs would ultimately prevail. To be sure, even if the Government's position was not substantially justified with regard to only a single, dispositive issue in the case, that would be enough to grant the plaintiffs' motion, which in any event does not seek fees or costs for any time before the Second Circuit reversed and remanded the case to me on the due process claim. *See Maxey*, 1996 WL 492906, at *3 (government "cannot prevail by arguing that [it] was substantially justified in some of the positions [it] took if [it] was not substantially justified on the [dispositive] issue") (citing *Myers v. Sullivan*, 916 F.2d 659, 667 n.5 (11th Cir. 1990)). Nonetheless, it is worth noting that the issue on which the Second Circuit remanded was a narrow one and was based on a single, specific factual allegation about hospitals' reliance on "rote application" of commercial screening tools. *See Barrows v. Burwell*, 777 F.3d 106, 114 (2d Cir. 2015). In accordance with the Second Circuit's instructions, that allegation initially was the focus of discovery on remand, *see id.* at 115, but over time the case broadened into areas not contemplated by the Second Circuit's opinion as Congress adopted legislation requiring notice to individuals placed on observation status and the Secretary adopted new regulations to govern Part A coverage for hospital admission, including the "two-midnight rule." The plaintiffs filed new intervenor complaints to incorporate these developments into the case, and, ultimately, the

trial ranged well beyond commercial screening tools and into waters not charted in the Second Circuit's initial opinion.

Furthermore, the evidence at trial did not uniformly point in the plaintiffs' favor, even on the narrower issue (described above) on which the plaintiffs eventually prevailed. *See, e.g., Alexander*, 2020 WL 1430089, at *20-21 (finding that "[t]here was some evidence that the final decision whether to enter an observation order or leave the inpatient admission order undisturbed belongs to the treating physician" but that, "[o]n the other hand, some physicians believe that the utilization review team makes the final call as to patient status" and that, ultimately, "the recommendation of the utilization review team is, at the least, highly influential"); *Barrows*, 24 F.4th at 136 (noting that "there is some inconsistency on this point in the record" when reviewing my determination that URCs, as opposed to the patient's attending physician, have decisive influence on the decision to reclassify from inpatient to observation). There was a great deal of evidence in this case, and it was complex and, at times, conflicting. *Johnson v. Commr. of Soc. Sec.*, 64 F. Supp. 2d 55, 58 (D. Conn. 1999) (government substantially justified where "plaintiff's case implicated complicated factual issues"); *accord Pullen v. Bowen*, 820 F.2d 105, 109 (4th Cir. 1987), *abrogated on other grounds as recognized in Lively v. Bowen,* 858 F.2d 177, 180 n.1 (4th Cir. 1988) (government substantially justified when the "case was not an easy one. It required government attorneys and an administrative law judge to make difficult judgments on the evidence"). And both I and the Second Circuit remarked that some of the dispositive legal issues were "close." *Alexander*, 2020 WL 1430089, at *37 ("Although it is a closer call, the Two Midnight Rule is also sufficiently 'objective' to "meaningfully channel official discretion.") *Barrows*, 24 F.4th at 133 ("While the issue of adequate notice to the party of a shift of focus by the district court presents a close question, we conclude that the district court did not abuse its

discretion ...."); *see U.S. v. $19,047.00 in U.S. Currency*, 95 F.3d 248, 252 (2d Cir. 1996) (upholding district court's finding that government action and legal defense of it were substantially justified "[g]iven the closeness of the [issue] determination in this case"). The Government is also correct in noting that the distinction I ultimately drew between the unsuccessful, broader claim plaintiffs made and the narrower claim that ultimately prevailed was one that I had, earlier in the case, found "immaterial with respect to the Due Process claim." *Bagnall v. Sebelius*, 2013 WL 5346659 *23 n.21 (D. Conn. Sept. 23, 2013), *rev'd in part and remanded sub. nom. Barrows v. Burwell*, 777 F.3d 106 (2d Cir. 2015). The Second Circuit's opinion reversing my dismissal of the due process claim did not address this issue. Under these circumstances, it would be difficult to fault the Government for failing to anticipate that I would, after further developments and consideration of a full trial record, change my mind on this score.

Finally, the plaintiffs rely heavily on the Second Circuit's opinion in *Healey v. Leavitt*, 485 F.3d 63 (2d Cir. 2007). That case involved the Government's failure to make provision for notice of appeal rights for Medicare beneficiaries who faced reduction or termination of home health care services provided by home health agencies. *Id.* at 64. There, the Court of Appeals found that the Government had failed to include any provisions in its Medicare manual requiring home health agencies to notify patients of their appeal rights, "as was clearly required by statute." *Id.* at 67-68. In an earlier opinion in the same case, the Court of Appeals had found that the relevant statute required, in "clear and unambiguous" language, written notice prior to any reduction or termination of items or services furnished by home health agencies. *Lutwin v. Thompson*, 361 F.3d 146, 156 (2d Cir. 2004). In this case, by contrast, there was no statute or regulation that answered the questions at issue, in "clear and unambiguous" language or otherwise. There was only, as noted above, the broad principle of due process and, more

10

specifically, cases defining property interests in distantly related factual contexts and case law on the state action issue that was not easily reconcilable. Further, in *Healey*, the Government had "failed to offer any justification for the Secretary's failure to require the HHAs to provide written notice of the termination of benefits prior to the onset of this litigation." *Healey*, 485 F.3d at 67. That is not the case here, where the Government has filed a detailed brief justifying its pre-litigation and litigation positions, a brief I find largely persuasive.

I also must address plaintiffs' motion for appellate attorneys' fees, which the Second Circuit has referred to me "to consider alongside Plaintiffs' parallel request seeking attorneys' fees for work performed in district court." ECF No. 489 at 1. "While appellate courts may determine appellate fees, district courts are generally best suited to undertake such tasks in the first instance." *Odeon Capital Group LLC v. Ackerman*, 864 F.3d 191, 199 (2d Cir. 2017); *see Dague v. City of Burlington*, 976 F.2d 801, 804 (2d Cir. 1991) (plaintiff seeking fees in connection with appeal should first file in appellate court, at which point appellate court can determine whether fees issues "should be referred to the district court for decision"). A "court should not perform separate evaluations of the Government's position at each stage of the proceedings," *$19,047.00 in U.S. Currency*, 95 F.3d at 251, but instead make one "determination for the entire civil action," *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 159 (1990).

Plaintiffs request appellate fees and costs arising from their work responding to the Government's appeal of my judgment in this case. *See* ECF No. 489 at 35 ("Plaintiffs have also eliminated all work [in their appellate fees request] predating remand of the case to the District Court in 2015, which includes the first appeal"). That work concerns the Government's positions that I discussed above. Plaintiffs seem to recognize this is the case, as their motion for appellate fees and costs presents the same arguments about substantial justification as their

motion filed in the district court.  *See* ECF No. 489 at 25-31.  Because the Government's positions in the district court were substantially justified — for the reasons explained above — and the government's positions remained unchanged on appeal, its positions on appeal were also substantially justified.

### III.   CONCLUSION

Because I find that the Government's position was substantially justified, I must DENY the motion for attorneys' fees and costs (ECF Nos. 479, 487), as well as the motion for appellate attorneys' fees and costs remanded to me by the Second Circuit.  I add that this ruling should not detract from the fine work plaintiffs' counsel did for their clients in this case.  Both the nonprofit and private law firm attorneys representing the plaintiffs demonstrated great legal skill, passion for their cause, and enormous dedication and persistence over the course of this marathon litigation, and they secured impactful and lasting relief for their clients.  That the statute does not reward such efforts here due in large part to the difficulty of the case does not diminish their accomplishment.

IT IS SO ORDERED.

_____/s/_____<br>Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
       January 31, 2023